No. 24-4427

**IN THE UNITED STATES COURT OF APPEAL
FOR THE NINTH CIRCUIT**

_____

KIMBERLY LONG,
*Plaintiff-Appellee,*

vs.

THOMAS WEEKS, RONALD ANDERSON, DANIEL
BLOOMFIELD, ROBERT NEWMAN, AND DANIEL
VERDUGO
*Defendants/Appellants.*

_____

On Appeal from the United States District Court for the
Central District of California
Case No. 5:21-cv-02008-FWS-E
Judge: Hon. Fred W. Slaughter

_____

**APPELLANTS' OPENING BRIEF**
_____

Lee H. Roistacher, Esq.
(SBN 179619)
Mitchell D. Dean, Esq.
(SBN 128926)
Dean Gazzo Roistacher LLP
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Tel.: (858) 380-4683
Fax: (858) 492-0486
E-mail: lroistacher@deangazzo.com
        mdean@deangazzo.com

John D. Higginbotham (SBN 204179)
Neil D. Okazaki (SBN 201367)
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
        neil.okazaki@coronaca.gov

1

# TABLE OF CONTENTS

INTRODUCTION.......................................................16

STATEMENT OF JURISDICTION...............................20

ISSUES PRESENTED.................................................21

STATEMENT OF THE CASE......................................23

    A.    First Amended Complaint............................23

    B.    First Appeal.............................................25

    C.    Proceedings On Remand..............................26

STANDARD OF REVIEW............................................27

SUMMARY OF ARGUMENT......................................29

ARGUMENT.............................................................31

    A.    Qualified Immunity....................................31

        1.    The Supreme Court's "demanding" and "exacting" "clearly established" standard requires factual specificity........33

        2.    This Court's recent decisions recognize and faithfully apply the Supreme Court's "demanding" and "exacting" "clearly established" standard when holding precedent with dissimilar facts does not constitute "clearly established" law.............................................40

    B.    The District Court's Faulty "Clearly Established" Analysis Relied On General Constitutional Principles And Cases With Materially Distinguishable Facts....................55

C.     Long Failed To Plausibly Allege Weeks Fabricated Evidence In Violation Of Her Fourteenth Amendment Rights Under "Clearly Established" Law Existing In 2003.............................................................62

     1.     Failure to allege a plausible claim...........63

     2.     Failure to demonstrate "clearly established" law in 2003.......................72

D.     Long Failed To Plausibly Allege Anderson, Newman, Or Verdugo Failed To Collect Or Preserve Evidence In Violation Of Her Fourteenth Amendment Rights Under "Clearly Established" Law Existing In 2003......75

     1.     Failure to allege a plausible claim...........77

     2.     Failure to demonstrate "clearly established" law in 2003.......................85

E.     Long Failed To Plausibly Allege Anderson, Weeks, Or Bloomfield Suppressed Evidence In Violation Of Her Fourteenth Amendment Rights Under "Clearly Established" Law Existing In 2003............................................................88

     1.     Failure to allege a plausible claim...........88

     2.     Failure to demonstrate "clearly established" law in 2003.......................96

F.     Long's Fourth Amendment Malicious Prosecution Claim Against Anderson, Weeks, Newman, Bloomfield And Verdugo Fails To Plead A Plausible Claim Because They Are Immune For The Conduct Underlying This Claim........101

3

CONCLUSION...........................................................103

CERTIFICATE OF COMPLIANCE PURSUANT TO
FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NO. 24-4427..............................................105

STATEMENT OF RELATED CASES UNDER NINTH
CIRCUIT RULE 28-2.6................................................106

CERTIFICATE OF SERVICE.....................................107

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Youngblood*
       488 U.S. 51 (1988)………………………………….*Passim*

*Ashcroft v. al-Kidd*
       563 U.S. 731 (2011)………………………………*Passim*

*Ashcroft v. Iqbal*
       556 U.S. 662 (2009)………………………........19, 20, 28

*Avery v. City of Milwaukee*
       847 F.3d 433 (7th Cir. 2017)……………………….65

*Bailey v. Rae*
       339 F.3d 1007 (9th Cir. 2003)………………..…99, 100

*Banks v. Dretke*
       540 U.S. 668 (2004)………………………………..100

*Bell Atl. Corp. v. Twombly*
       550 U.S. 544 (2007)……………………………….28

*Brady v. Maryland*
       373 U.S. 83 (1963)……………………........*Passim*

*Benn v. Lambert*
       283 F.3d 1040 (9th Cir. 2002)………………..…97, 99

*Burgan v. Nixon*
       711 F. App'x 855 (9th Cir. 2017)………………….61

*Caldwell v. City & County of San Francisco*
       889 F.3d 1105 (9th Cir. 2018)…………………….66

*California v. Trombetta*
467 U.S. 479 (1984)........................................*Passim*

*Camreta v. Greene*
563 U.S. 692 (2011).............................................38

*Carley v. Aranas*
103 F.4th 653 (9th Cir. 2024)..........................*Passim*

*Carrillo v. County of Los Angeles*
798 F.3d 1210 (9th Cir. 2015)..........................*Passim*

*Chiaverini v. City of Napoleon*
144 S. Ct. 1745 (2024).......................................102

*City & County of San Fransisco v. Sheehan*
575 U.S. 600 (2015)............................................33

*Coleman v. City of Peoria*
925 F.3d 336 (7th Cir. 2019)..........................65, 66

*Conservation Force v. Salazar*
646 F.3d1240 (9th Cir. 2011)..............................27

*Cooper v. Calderon*
255 F.3d 1104 (9th Cir. 2001)..............................78

*Costanich v. Department of Soc. & Health Servs.*
627 F.3d 1101 (9th Cir. 2010)..............................63

*Crawford-El v. Britton*
523 U.S. 574 (1998)............................................61

*Cuevas v. City of Tulare*
107 F.4th 894 (9th Cir. 2024).........................*Passim*

*Cunningham v. City of Wenatchee*
345 F.3d 802 (9th Cir. 2003)..........................*Passim*

*David v. Kaulukukui*
    38 F.4th 792 (9th Cir. 2022)..............................20, 29

*Devereaux v. Abbey*
    263 F.3d 1070 (9th Cir. 2001)..........................*Passim*

*District of Columbia v. Wesby*
    583 U.S. 48 (2018)...........................................*Passim*

*Drummond ex rel. Drummond v. City of Anaheim*
    343 F.3d 1052 (9th Cir. 2003).................................53

*Evans v. Skolnik*
    997 F.3d 1060 (9th Cir. 2021).................................34

*Felarca v. Birgeneau*
    891 F.3d 809 (9th Cir. 2018)..................................39

*Floyd v. Laws*
    929 F.2d 1390 (9th Cir. 1991)................................56

*Gantt v. City of Los Angeles*
    717 F.3d 702 (9th Cir. 2013).................................70

*Gausvik v. Perez*
    345 F.3d 813 (9th Cir. 2003)............................65, 83

*Giglio v. United States*
    405 U.S. 150 (1972).............................................88

*Gill v. City of Milwaukee*
    850 F.3d 335 (7th Cir. 2017)............................74, 86

*Gonzalez v. Wong*
    667 F.3d 965 (9th Cir. 2011)..................................95

*Gordon v. County of Orange*
    6 F.4th 961 (9th Cir. 2021)....................................37

*Hamby v. Hammond*
821 F.3d 1085 (9th Cir. 2016).........................*Passim*

*Hart v. City of Redwood City*
99 F.4th 543 (9th Cir. 2024)..................................49

*Hendricks v. Calderon*
70 F.3d 1032 (9th Cir. 1995)...............................68

*Hooper v. Shinn*
985 F.3d 594 (9th Cir. 2021)............................89, 90

*Hopson v. Alexander*
71 F.4th 692 (9th Cir. 2023).......................43, 56, 73

*Hyde v. City of Willcox*
23 F.4th 863 (9th Cir. 2022).......................20, 27, 28

*In re Long*
10 Cal. 5th 764 (2020)................................16, 71, 92

*Jackson v. Brown*
513 F.3d 1057 (9th Cir. 2008)...............................89

*Johnson v. Barr*
79 F.4th 996 (9th Cir. 2023)............................42, 43

*Keates v. Koile*
883 F.3d 1228 (9th Cir. 2018)...............................29

*Kennedy v. Ridgefield City*
439 F.3d 1055 (9th Cir. 2006).........................*Passim*

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018)................................28

*Kirkpatrick v. County of Washoe*
843 F.3d 784 (9th Cir. 2016)................................33

*Kisela v. Hughes*
    584 U.S. 100 (2018)..................................*Passim*

*Kramer v. Cullinan*
    878 F.3d 1156 (9th Cir. 2018)..............................39

*Kyles v. Whitley*
    514 U.S. 419 (1995)....................................96, 97

*Lane v. Franks*
    573 U.S. 228 (2014)........................................39

*Long v. Johnson*
    736 F.3d 891 (9th Cir. 2013)...............................16

*Long v. Lattimore*
    2012 U.S. Dist. LEXIS 56652
    (C.D. Cal. Mar. 16, 2012)..................................16

*Long v. Weeks*
    2024 U.S. App. LEXIS 9391
    (9th Cir. Apr. 18, 2024)...............................18, 25

*Martinez v. High*
    91 F.4th 1022 (9th Cir. 2024).........................*Passim*

*Mattos v. Agarano*
    661 F.3d 443 (9th Cir. 2011)...............................36

*McGuigan v. Cty. of San Bernardino*
    698 F. App'x 919 (9th Cir. 2017)..........................103

*McSherry v. City of Long Beach*
    423 F.3d 1015 (9th Cir. 2005)..............................63

*Mellen v. Winn*
    900 F.3d 1085 (9th Cir. 2018)...................57, 89, 96

*Miller v. Vasquez*
    868 F.2d 1116 (9th Cir. 1989)...........................*Passim*

*Mills v. City of Covina*
    921 F.3d 1161 (9th Cir. 2019)..............................102

*Mitchell v. Forsyth*
    472 U.S. 511 (1985)............................................19

*Moore v. City of Oakland*
    242 F. Supp. 3d 891 (N.D. Cal. 2017).......................80

*Morris v. Ylst*
    447 F.3d 735 (9th Cir. 2006)..................................91

*Mullenix v. Luna*
    577 U.S. 7 (2015).......................................29, 35, 55

*Napue v. Illinois*
    360 U.S. 264 (1959).......................................74, 75

*Orn v. City of Tacoma*
    949 F.3d 1167 (9th Cir. 2020)...............................43

*Ortiz v. Stewart*
    149 F.3d 923 (9th Cir. 1998).................................93

*Pearson v. Callahan*
    555 U.S. 223 (2009)...........................................32

*Peck v. Hinchey*
    755 F. App'x 723 (9th Cir. 2019)...........................103

*Pennsylvania v. Ritchie*
    480 U.S. 39 (1987)............................................68

*People v. Long*
    2008 Cal. App. Unpub. LEXIS 9448 (Nov. 21, 2008)...16

*People v. Long*
    2009 Cal. LEXIS 1483 (Feb. 25, 2009).....................16

*People v. Long*
    2018 Cal. App. Unpub. LEXIS 3097 (May 3, 2018).....16

*Perez v. City of Fresno*
    98 F.4th 919 (9th Cir. 2024)...........................*Passim*

*Phillips v. Woodford*
    267 F.3d 966 (9th Cir. 2001).................................81

*Polanco v. Diaz*
    76 F.4th 918 (9th Cir. 2023).................................40

*Pyle v. State*
    317 U.S. 213 (1942)......................................74, 75

*Reichle v. Howards*
    566 U.S. 658 (2012)...........................................38

*Richards v. County of San Bernardino*
    39 F.4th 562 (9th Cir. 2022).................................62

*Richards v. County of San Bernardino*
    2022 U.S. App. LEXIS 17535
    (9th Cir. June 24, 2022).....................................84

*Rico v. Ducart*
    980 F.3d 1292 (9th Cir. 2020)...............................38

*Rivas-Villegas v. Cortesluna*
    595 U.S. 1 (2021).....................................*Passim*

*Rosales-Martinez v. Palmer*
    753 F.3d 890 (9th Cir. 2014).................................28

*Sabra v. Maricopa County Cmty. Coll. Dist.*
44 F.4th 867 (9th Cir. 2022)..........................36, 37, 38

*Saucier v. Katz*
533 U.S. 194 (2001)...............................................44

*Seidner v. de Vries*
39 F.4th at 602 (9th Cir. 2022)................................44

*Sharp v. County of Orange*
871 F.3d 901 (9th Cir. 2017)...................................37

*Singh v. Prunty*
14 F.3d 1157 (9th Cir. 1998)...................................97

*Smith v. Agdeppa*
81 F.4th 994 (9th Cir. 2023).............................39, 41

*Spencer v. Peters*
857 F.3d 789 (9th Cir. 2017).............................62, 63

*Spencer v. Pew*
117 F.4th 1130 (9th Cir. 2024).....................*Passim*

*Strickler v. Greene*
527 U.S. 263 (1999)..........................................89, 97

*Tatum v. Moody*
768 F.3d 806 (9th Cir. 2014)...................................90

*Taylor v. Barkes*
575 U.S. 822 (2015).........................................38, 39

*Tennison v. City & County of San Francisco*
570 F.3d 1078 (9th Cir. 2009)................................100

*Turner v. United States*
582 U.S. 313 (2017)...............................................89

*Tuuamalemalo v. Greene*
    946 F.3d 471 (9th Cir. 2019)……………………….…..57

*United States v. Agurs*
    427 U.S. 97 (1976)……………………………………90, 95

*United States v. Bagley*
    473 U.S. 667 (1985)………………………………...96, 97

*United States v. Butler*
    567 F.2d 885 (9th Cir. 1978)………………………….97

*United States v. Cooper*
    983 F.2d 928 (9th Cir. 1993)……………………..…..87

*United States v. Drake*
    543 F.3d 1080 (9th Cir. 2008)………………………...79

*United States v. Emor*
    573 F.3d 778 (D.C. Cir. 2009)………………………..92

*United States v. Martinez-Martinez*
    369 F.3d 1076 (9th Cir. 2004)……………………….79

*United States v. Oruche*
    484 F.3d 590 (D.C. Cir. 2007)……………………….93

*United States v. Olsen*
    704 F.3d 1172 (9th Cir. 2013)……………………….91

*United States v. Robertson*
    895 F.3d 1206 (9th Cir. 2018)……………………….78

*United States v. Sablotny*
    21 F.3d 747 (7th Cir. 1994)………………………….70

*United States v. Sanchez*
    176 F.3d 1214 (9th Cir. 1999)……………………….91

*United States v. Vgeri*
    51 F.3d 876 (9th Cir. 1995)...............................92, 93

*Vos v. City of Newport Beach*
    892 F.3d 1024 (9th Cir. 2018).................................35

*Waid v. County of Lyon*
    87 F.4th 383 (9th Cir. 2023)..................................37

*West v. City of Caldwell*
    931 F.3d 978 (9th Cir. 2019).................................37

*White v. Pauley*
    580 U.S. 73 (2017).....................................33, 75, 86

*Wilkins v. Vandiver*
    2022 U.S. Dist. LEXIS 235730
    (C.D. Cal. Oct. 25, 2022).......................................59

*Williams v. Woodford*
    384 F.3d 567 (9th Cir. 2002)........................69, 70, 71

*Wood v. Moss*
    572 U.S. 744 (2014) ..............................................38

*Yousefian v. City of Glendale*
    779 F.3d 1010 (9th Cir. 2015) ..............................102

## Statutes

28 U.S.C. § 1291...........................................................20

28 U.S.C. § 1331...........................................................20

42 U.S.C. § 1983.................................................*Passim*

Fed. R. Civ. Proc. 12(b)(6)..........................................27

Fed. R. Evid. 701.........................................................91

# INTRODUCTION

Kimberly Long was convicted in 2005 of the 2003 murder of her live-in boyfriend Oswaldo Conde. After years of unsuccessful post-conviction challenges,[1] on an order to show cause from the California Supreme Court, the trial court vacated Long's conviction in 2016 for ineffective assistance of counsel for not consulting a time of death expert. ER-128-132. Notably, the trial court rejected Long's factual innocence claim. *Id.*

On the government's appeal, a California appellate court reversed the ineffective assistance of counsel finding, *People v. Long*, 2018 Cal. App. Unpub. LEXIS 3097 (May 3, 2018), but the California Supreme Court agreed with the trial court and vacated Long's conviction in 2020. *In re Long*, 10 Cal. 5th 764, 767 (2020).

---

[1]*E.g., Long v. Johnson* 736 F.3d 891 (9th Cir. 2013); *Long v. Lattimore,* 2012 U.S. Dist. LEXIS 56652 (C.D. Cal. Mar. 16, 2012); *Long v. Lattimore*, 2012 U.S. Dist. LEXIS 56655 (Apr. 19, 2012); *People v. Long*, 2009 Cal. LEXIS 1483 (Feb. 25, 2009); *People v. Long*, 2008 Cal. App. Unpub. LEXIS 9448 (Nov. 21, 2008).

*Not once in her post-conviction briefing did Long ever claim constitutional misconduct by any police officer.* See District Court Electronic Case Filing System, Docket No. 73 (ECF Doc. 73), pp. 3-4, 6-179 (post-conviction briefs). Nor has any court found her factually innocent.

That says a lot about Long's "wrongful conviction" case against City of Corona police officers Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, and Daniel Verdugo, (collectively "Officers," unless context requires otherwise) for alleged suppressing and fabrication of evidence and for failing to collect and preserve evidence.

This Court has seen this case before, having already reversed and vacated the district court's December 27, 2022 order denying the Officers' qualified immunity-based motions to dismiss.

Reversing the district court's denial of qualified immunity, this Court found the Officers immune from § 1983 conspiracy liability, and further vacated and remanded to the district court for an "individualized assessment of

17

whether each [Officer] is entitled to qualified immunity" on Long's remaining § 1983 claims. *Long v. Weeks*, No. 23-55004, 2024 U.S. App. LEXIS 9391, at *3 (9th Cir. Apr. 18, 2024).

On remand, the district court again erred, and the Officers are forced to appeal from the district court's July 17, 2024 order denying their qualified immunity-based motions to dismiss Long's remaining 42 U.S.C. § 1983 claims.

Although the district court recited Long's allegations against some of the officers in more detail this time, the district court again wrongly found Long plausibly alleged Fourteenth Amendment violations.

The district court also, again, failed to perform the mandated comparison of the facts Long alleges to facts in precedent existing in 2003. This is the critical inquiry because factually distinguishable precedent does not constitute "clearly established" law sufficient to defeat qualified immunity and neither Long nor the district court cited a single factually similar case existing in 2003.

Accordingly, the Officers are entitled to qualified immunity on: (1) Long's Fourteenth Amendment substantive due process claim asserting: (a) Weeks fabricated evidence; (b) Anderson, Newman, Weeks and Bloomfield suppressed exculpatory evidence; (c) Anderson, Newman and Verdugo failed to collect and preserve evidence; and (2) Long's Fourth Amendment malicious prosecution claim, which is based on the alleged Fourteenth Amendment violations.

Although this appeal follows the denial of a motion to dismiss, the Officers' appeal is no less important. Because qualified immunity is an "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial," the Supreme Court commands lower courts to resolve qualified immunity as early as possible and before discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive

discovery.'"). This includes resolution, when appropriate, of qualified immunity questions raised on pleading challenges. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011) (resolving qualified immunity on a motion to dismiss); *Hyde v. City of Willcox*, 23 F.4th 863, 873-75 (9th Cir. 2022) (same).

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Long's § 1983 claims under 28 U.S.C. § 1331.

This Court has jurisdiction over this interlocutory appeal of the district court's order denying the Officers qualified immunity. 28 U.S.C. § 1291; *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022).

Jurisdiction exists to determine whether Long sufficiently alleges constitutional violations against each officer and whether the unconstitutionality of each officer's conduct was "clearly established" in 2003. *Iqbal*, 556 U.S. 672-75.

On July 17, 2024, the Officers timely appealed the district court's July 17, 2024 order, ER-266-267. Fed. R. App. Proc. 4.

## ISSUES PRESENTED

\*      Is Weeks entitled to qualified immunity from liability on Long's Fourteenth Amendment claim for fabricating evidence because Long has not sufficiently alleged circumstantial evidence of fabrication through interviewing techniques that were so coercive and abusive that Weeks knew or should have known would lead to false witness testimony or, alternatively, no "clearly established" law existed in 2003 holding the interviewing tactics Weeks used on witnesses were so coercive or abusive that all reasonable officers would have understood the tactics would or could generate fabricated evidence?

\*      Are Anderson, Newman, and Verdugo entitled to qualified immunity from liability on Long's Fourteenth Amendment claims for failing to collect and preserve evidence because she failed to plausibly allege bad faith

failure to collect or preserve evidence known to be exculpatory or, alternatively, no "clearly established" law existed in 2003 holding a police officer has a constitutional obligation to collect all fingerprints or DNA evidence from a crime scene and to test and preserve all collected evidence before disposing of it?

&ast; Are Weeks, Anderson, Newman, and Bloomfield entitled to qualified immunity from liability on Long's Fourteenth Amendment claim for suppressing evidence because Long failed to plausibly allege unconstitutional suppression of evidence or, alternatively, no "clearly established" law existed in 2003 holding the evidence Long alleges they suppressed was exculpatory or impeachment evidence required to be disclosed?

&ast; Are Weeks, Anderson, Newman, Bloomfield and Verdugo entitled to qualified immunity from liability on Long's Fourth Amendment malicious prosecution claim because they are immune from liability for the alleged

Fourteenth Amendment violations that undergird this claim?

## STATEMENT OF THE CASE

### A.    First Amended Complaint

Long asserted four § 1983 claims against the Officers: (1) Fourteenth Amendment substantive due process (Count I); (2) Fourth Amendment malicious prosecution (Count II); (3) failure to intervene in constitutional violations (Count III); and (4) conspiracy to violate civil rights (Count IV). ER-53-59.

Although plead as a single "count," Long's Fourteenth Amendment claim is four distinct claims asserted against different "groups" of officers: (1) suppressing exculpatory evidence against Anderson, Newman, Weeks, and Bloomfield, ER-42-46 ¶¶ 40-55; (2) fabricating evidence against Weeks, ER-46-49 ¶¶ 56-68; (3); failing to collect evidence against Anderson, Newman, and Verdugo; and (4)

failing to preserve evidence against Anderson, Newman, and Verdugo, ER-49-50 ¶¶ 69-73.[2]

Long's Fourth Amendment malicious prosecution claim alleges the Officers prosecuted her without probable cause by violating her substantive due process rights. ER-42-48, 55-56; *see also* ECF Doc. 144, p. 18:15-18 (conceding malicious prosecution claim is derivative of Fourteenth Amendment claims).

Long's failure to intervene claim alleged the Officers failed to intervene in each other's suppression, fabrication, failure to collect, and failure to preserve evidence. ER-42-48, 56-57.

Long's conspiracy to violate civil rights claim alleged the Officers conspired to frame her for murder. ER-42-48, 58-59.

---

[2] The Officers later expound on the allegations relating to each claim. However, the district court, relying on judicially noticeable public records, previously found untrue Long's allegation regarding the suppression of her blood free jacket. ECF Doc. 57, pp. 15-16. That allegation is accordingly not later discussed.

**B.     First Appeal**

In 2022, the Officers moved to dismiss Long's § 1983 claims asserting qualified immunity and arguing Long failed to allege plausible claims but, even if she did, the law in 2003 did not "clearly establish" the wrongfulness of the specific conduct alleged against each officer for each of Long's liability theories under the particular facts and circumstances of this case.  ECF Docs. 70-74.

On December 27, 2022, the district court rejected the Officers' arguments finding Long sufficiently alleged clearly established constitutional violations.  ECF Doc. 103.

On interlocutory appeal, this Court reversed, vacated and remanded. *Long*, 2024 U.S. App. LEXIS 9391.

Reversing, this Court found the Officers "are entitled to qualified immunity on the conspiracy claim because it is not clearly established that the intracorporate conspiracy doctrine is inapplicable to Section 1983 claims."  *Id.* at *3.

Vacating and remanding, this Court ordered "the district court to conduct an individualized assessment of

whether each [Officer] is entitled to qualified immunity for Long's remaining Section 1983 claims." *Id.*

## C.   Proceedings On Remand

The district court ordered supplemental briefing on the mandated individualized inquiry and set a July 11, 2024 hearing date.  ECF Docs. 138, 141, 144.

 After the hearing on July 17, 2024, the district court issued its "order regarding qualified immunity on remand." ER-5 (capitalizations removed).

After considering the original and supplemental briefing, the district court denied in part and granted in part the motions to dismiss.  ER-5-6, 32.

Regarding the denial of the motions to dismiss the Fourteenth Amendment claims for suppression and fabrication of evidence and failure to collect and preserve evidence, and the derivative Fourth Amendment malicious prosecution claim, the district court found Long alleged plausible constitutional violations under "clearly established" law existing in 2003. ER-13-29.

26

Though finding a "clearly established" constitutional obligation in 2003 for officers to intervene in the conduct underlying Long's Fourteenth Amendment claims, the district court found Long did not allege a plausible failure to intervene claim and dismissed that claim.[3]  ER-29-31.

The Officers appealed the district court's July 17, 2024 order that same day and the district court *sua sponte* stayed the action pending resolution of this appeal.  ER-266-267; ECF Doc. 161.

## STANDARD OF REVIEW

Under Rule 12(b)(6), dismissal of a complaint is proper "if there is a lack of a cognizable legal theory," *Conservation Force v. Salazar*, 646 F.3d1240, 1242 (9th Cir. 2011), or "if it fails to include 'enough facts to state a claim to relief that is plausible on its face.'" *Hyde*, 23 F.4th at 869.

---

[3] The Officers disagree with the district court's "clearly established" conclusion but recognize the inability to challenge that determination in this appeal because that claim is presently dismissed.

"A complaint's claims are plausible when the pleaded facts 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements," "conclusory statements," and "'legal conclusion[s] couched as [] factual allegation[s]'" are insufficient. *Iqbal*, 556 U.S. at 678. Allegations merely establishing *potential* liability are likewise insufficient. *Id.* at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not shown—that the pleader is entitled to relief.") (simplified); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").[4]

---

[4] Judicially noticeable facts are properly considered, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), and the district court took judicial notice of records regarding Long's criminal proceedings in its first order denying the Officer's motions to dismiss, ECF Docs. 103, pp. 6-8 (order), 73 (request); 30 (request), 30-1 through 30-10, 3-12 (documents). *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894-95 (9th Cir. 2014 (judicial notice of court

This Court reviews *de novo* the denial of a qualified immunity-based motion to dismiss. *David*, 38 F.4th at 799. The Court "consider[s] whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

## SUMMARY OF ARGUMENT

This is not a typical "wrongful conviction" case. Despite Long's assertions, she has never been "exonerated." Nor has any court found unconstitutional conduct by the Officers. That Long never once raised constitutional misconduct by the Officers in her myriad challenges to her conviction speaks volumes as to why Long cannot plausibly

---

proceedings "provide[d] relevant and material details adding to and clarifying the allegations of the complaint").

allege constitutional violations, much less under "clearly established" law existing in 2003.

The Officers *have* qualified immunity *unless* Long's allegations sufficiently show violations of "clearly established" constitutional obligations existing in 2003.

Long did not overcome this presumption and the district court erred in its qualified immunity analysis in two independent ways: (1) improperly relying on Long's conclusory and otherwise insufficient allegations to find she plausible alleged constitutional violations against each officer on the myriad theories of liability asserted against them; and (2) improperly relying on precedent stating broad general legal principles or precedent with materially distinguishable facts to find it "clearly established" in 2003 that the specific conduct alleged against each officer violated the constitution.

Had the district court, as the Supreme Court and modern Ninth Circuit precedents demand, examined whether controlling and factually similar precedent existed

in 2003 holding *each officer's specific conduct in the particularized circumstances of this case* unconstitutional, the district court would have been compelled to grant the Officers' motions to dismiss because controlling precedents existing in 2003 did not demonstrate beyond all debate that the Officers were plainly incompetent or knowingly violated the law.

By rejecting the Officers' assertion of qualified immunity, the district court placed the precise litigation burdens on the Officers qualified immunity serves to avoid -- more than three years of litigation despite Long's generalized and conclusory claims of wrongful conduct and the absence of "clearly established" law in 2003 substantiating Long's allegations of unconstitutional conduct.

## ARGUMENT

### A.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743.

"Qualified immunity shields federal and state officials from money damages *unless a plaintiff pleads facts* showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735 (emphasis added); *see also District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) ("Under our precedents, officers *are entitled to* qualified immunity under §1983 *unless* (1) they violated a federal statutory or constitutional right, and (2) the

unlawfulness of their conduct was 'clearly established at the time.'") (emphasis added).

1. **The Supreme Court's "demanding" and "exacting" "clearly established" standard requires factual specificity**

"Clearly established" means precedent existing "at the time of the challenged conduct," *al-Kidd*, 563 U.S. at 742, "'squarely governs the specific facts' at issue," *Kisela v. Hughes*, 584 U.S. 100, 104 (2018), such that it "placed the [un]constitutionality of the officer's conduct 'beyond debate,'" *Wesby*, 583 U.S. at 63, under the "'particularized' … facts of the case," *White v. Pauley,* 580 U.S. 73, 79 (2017).

The Supreme Court's "clearly established" standard is "demanding" and "exacting."  *Wesby*, 583 U.S. at 63; *City & County of San Fransisco v. Sheehan*, 575 U.S. 600, 611 (2015); *see also Kirkpatrick v. County of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (en banc) ("'This exacting standard …'") (quoting *Sheehan*, 575 U.S. at 611).

"[A]t the time of the officer's conduct, the law [must have been] sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 583 U.S. at 63 (simplified) (emphasis added); *see also Kisela*, 584 U.S. at 104 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."); *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021).

"To be clearly established ... [t]he rule must be *settled law*, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent." *Wesby*, 583 U.S. at 63 (simplified) (emphasis added).

"The precedent must be clear enough that every reasonable official would interpret it to establish the

particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that every reasonable official would know." *Id.* (simplified).

"The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* (simplified). "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  This requires a high degree of specificity." *Id.*

To be sure, precedent with "materially distinguishable" facts is insufficient to constitute clearly established law. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6-7 (2021).

"'The dispositive question is therefore "whether the violative nature of particular conduct is clearly established" in the specific context of the case.'" *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (quoting *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015))).

In answering that dispositive question, "courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (simplified); *see also Rivas-Villegas,* 595 U.S. at 5 ("This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'").

"A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Wesby*, 583 U.S. at 64 (simplified).

As this Court has recognized, "[e]xcept in the rare case of an obvious instance of constitutional misconduct" "[p]laintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these [officers] in this case that their particular conduct was unlawful."[5]

---

[5] "[T]he bar for finding such obviousness is quite high." *Mattos v. Agarano*, 661 F.3d 443, 42 (9th Cir. 2011) (en banc); *see also Sabra v. Maricopa County Cmty. Coll. Dist.*,

*Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

To achieve that kind of notice, "'the prior precedent must be *"controlling"*—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of [appellate] courts outside the relevant jurisdiction.'" *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (quoting *Sharp*, 871 F.3d at 911) (emphasis added); *West v. City of Caldwell*, 931 F.3d 978, 983 (9th Cir. 2019) ("we must locate a controlling case that 'squarely governs the specific facts at issue'"); *see Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) ("'district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of

_____

44 F.4th 867, 888 (9th Cir. 2022) ("Obvious "cases are few and far between" and "we are hesitant to find a right clearly established without a body of relevant case law.").  Moreover, the Supreme Court has only applied the "obviousness" standard in Eighth Amendment cases. *Cuevas,* 107 F.4th at 901, and this Court has in other contexts (seizure and force) "in exceedingly rare circumstances with extreme facts." *Waid v. County of Lyon*, 87 F.4th 383, 389 (9th Cir. 2023) (citing cases).

qualified immunity'") (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011)).

Moreover, the highly "fact-specific, highly contextualized nature of the inquiry does not depend on which particular constitutional right a given plaintiff claims the officials have violated.'" *Rico v. Ducart*, 980 F.3d 1292, 1299 (9th Cir. 2020). "Not only has the Supreme Court never suggested any such distinction, but several cases affirmatively repudiate it." *Hamby*, 821 F.3d at 1091 (citing *Wood v. Moss*, 572 U.S. 744 (2014) (First Amendment), *Taylor v. Barkes*, 575 U.S. 822 (2015) (Eighth Amendment), and *Reichle v. Howards*, 566 U.S. 658 (2012) (First Amendment); *see e.g., Carley v. Aranas,* 103 F.4th 653, 660-61 (9th Cir. 2024) (applying specificity mandate to Eighth Amendment claim); *Sabra*, 44 F.4th at 886-92 (9th Cir. 2022) (same, as to First Amendment claims).

Put simply, the Supreme Court requires a plaintiff "'to prove that "precedent on the books" at the time the officials acted "would have made clear to [them] that [their actions]

38

violated the Constitution.""" *Carley,* 103 F.4th at 661 (quoting *Hamby,* 821 F.3d at 1091 (original alterations) (quoting *Taylor*, 575 U.S. at 827)).  Stated differently, "[s]o long as existing case law 'did not preclude' an official from reasonably believing that his or her conduct was lawful, the official has a right to qualified immunity." *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)).

The plaintiff bears the burden of establishing a violation of constitutional law that was "clearly established" at the time of the alleged conduct. *Spencer v. Pew,* 117 F.4th 1130, 1137 (9th Cir.  2024); *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).  "[T]he burden is not on the [O]fficers to prove they fit perfectly within the facts of a case granting qualified immunity; the burden is on the plaintiff to show a violation of a clearly established right in the specific circumstances at issue." *Smith v. Agdeppa*, 81 F.4th 994, 1004 n.4 (9th Cir. 2023).

2.    **This Court's recent decisions recognize and faithfully apply the Supreme Court's "demanding" and "exacting" "clearly established" standard when holding precedent with dissimilar facts does not constitute "clearly established" law**

This Court has recognized it does not always follow the Supreme Court's directions when analyzing qualified immunity. *Spencer*, 117 F.4th at 1138 ("the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality'") (quoting *Kisela,* 584 U.S. at 104); *Carley*, 103 F.4th at 660 (same); *Hamby,* 821 F.3d at 1090 (stating that "our circuit has been repeatedly chastised [by the Supreme Court] for conducting the clearly established inquiry at too high a level of generality."); *see also Polanco v. Diaz*, 76 F.4th 918, 935 (9th Cir. 2023) (R. Nelson, J., dissenting) ("the majority concludes that clearly established means close enough. That is not the law.").

But more recent opinions from this Court overwhelmingly embrace and adhere to the Supreme Court's

directions on the specificity required to meet the "demanding" and "exacting" "clearly established" standard. *Smith,* 81 F.4th at 1001-02 (describing Supreme Court's "clearly established" requirement as "a high standard" and "[a]pplying these directives from the Supreme Court"); *Perez v. City of Fresno,* 98 F.4th 919, 924 (9th Cir. 2024) ("Specificity of the rule is critical .... Qualified immunity is a demanding standard because it protects all but the plainly incompetent or those who knowingly violate the law.") (simplified).

Recent decisions from this Court further reiterate and illustrate that general statements of law do not satisfy the Supreme Court's "exacting" "specificity" standard. *Spencer*, 117 F.4th at 1138 ("Although these general standards have long been established, that does not mean that any violation of them can therefore be said to violate 'clearly established' law. Rather, the qualified-immunity inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'") (quoting *Rivas-Villegas*, 595

U.S. at 5); *Smith*, 81 F.4th at 1006 ("These general statements from our prior cases cannot carry the day here …. The qualified immunity analysis 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" And Smith has not identified any precedent or body of precedent suggesting, much less confirming, that" the officer's conduct "was obviously unlawful in the circumstances [he] faced.") (citations omitted); *Johnson v. Barr*, 79 F.4th 996, 1006 (9th Cir. 2023) ("Johnson did not adequately identify cases that indicated that the Defendants' actions in arresting Johnson were clearly prohibited. ... [¶] The cases that Johnson cites ... are inapposite and relying upon them would violate the Supreme Court's mandate that rights should not be defined at a high level of generality.").

Recent decisions further affirm there must be "*factually analogous*" precedent for the law to be "clearly established" which requires the plaintiff to "identify a binding precedent that is *not 'materially distinguishable'* and

that can be said to 'govern the facts of this case' in the sense that it 'place[s] the statutory or constitutional question beyond debate.'" *Spencer*, 117 F.4th at 1138 (quoting *Rivas-Villegas*, 595 U.S. at 5-6) (emphasis added); *Carley,* 103 F.4th at 661 ("Carley fails to point to any precedent from the Supreme Court, our court, or 'a robust consensus of cases of persuasive authority,' [citation], *that governs the facts here*.") (emphasis added); *Hopson*, 71 F.4th at 702 ("None of these cases, however, is *factually analogous enough* to clearly establish that the detectives' specific conduct was unlawful.") (emphasis added); *id.* at 704 (finding "*factual distinctions*" in existing case law rendering it "*too different*" and "*materially distinct*" to constitute clearly established law) (emphasis added); *Johnson*, 79 F.4th at 1006 (plaintiff's cases "involve fact patterns related to a child's removal from a home, which is a situation not present here"); *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020) ("The plaintiff must instead identify precedent that holds 'certain conduct is a

constitutional violation under *facts not distinguishable in a fair way* from the facts presented in the case at hand.'") (emphasis added) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see, e.g., Seidner v. de Vries*, 39 F.4th at 602 (9th Cir. 2022) (finding precedent holding a roadblock to stop a motorcyclist constituted excessive force was factually distinguishable and did not clearly establish that using a roadblock to stop a bicyclist was excessive force, because "[t]here are material differences between motorized and non-motorized vehicles").

Because the law regarding qualified immunity has evolved significantly over the last two decades, this Court has also recently explained why existing cases relying on general propositions of constitutional law to find the law clearly established are insufficient to meet what the Supreme Court now requires for "clearly established" law. *Carley*, 103 F.4th at 660-61 ("We recently stated that 'it is not sufficient that *Farmer* clearly states the general rule that prison officials cannot deliberately disregard a

substantial risk of serious harm to an inmate. To be clearly established, the relevant right must have been defined more narrowly. Although *Farmer* provided needed clarification for the deliberate-indifference-to-serious-medical-needs standard … the Supreme Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.") (simplified); *id.* at 661 ("It is true that we have held that prison doctors are deliberately indifferent when they fail to provide or delay providing necessary medical treatment. But again, we believe this defines the right too broadly in light of our precedents that require us to look at the law in light of the specific context of the case, not as a broad general proposition.") (simplified); *Martinez v. High*, 91 F.4th 1022, 1031-32 (9th Cir. 2024) (In *Kennedy v. Ridgefield City*, 439 F.3d 1055 (9th Cir. 2006), "this court held that the officers were not entitled to qualified immunity because 'it was clearly established that state officials could be held liable where they affirmatively and with deliberate indifference

placed an individual in danger she would not otherwise have faced.' *Id.* at 1066. That broad statement applies equally to this case. But since *Kennedy*, this court and the Supreme Court have explained that "'clearly established law' should not be defined 'at a high level of generality.'" [Citations]. It is instead 'the facts of particular cases that clearly establish what the law is.'" [Citation].).

Because factual similarity is a *condition precedent* to finding the law "clearly established" and especially important in this case, the Officers further discuss some of this Court's more recent decisions.

In *Cuevas*, police officers shot and killed the driver in a gunfight and "accidently hit" a passenger who subsequently brought a claim under § 1983 for excessive force. 107 F.4th at 896. Though finding the passenger was "seized" under the Fourth Amendment, this Court found the officers entitled to qualified immunity. *Id.*

This Court found "no case clearly established that the officers could not return fire at [the driver], collaterally

hitting [the passenger]" and observed the "[passenger] relies on several cases to argue that her rights were clearly established when the officers, returning fire at the [driver], also shot her" but "[n]one of them have facts similar enough to 'clearly establish' that the officers used excessive force." *Id.* at 899; *see also id.* at 900-01 (factually distinguishing cases).

In *Carley*, this Court reversed the district court's denial of qualified immunity on an Eighth Amendment claim for deliberate indifference to medical care; specifically, denying a request for certain Hepatitis C treatment. 103 F.3d at 655. This Court held general constitutional propositions that "prison officials are deliberately indifferent when 'the official knows of and disregards an excessive risk to inmate health" and "prison doctors are deliberately indifferent when they fail to provide or delay providing necessary medical treatment" cannot constitute "clearly established" law because "this defines the right too broadly in light of our precedents that require us to look at the law in light of the

specific context of the case, not as a broad general proposition." *Id.* at 660-61 (simplified). "[T]he appropriately *narrow inquiry* asks whether a prison medical director between August 2013 and May 2018 would have been on notice that the [hepatitis prioritization policy] was unconstitutional at the time" and "whether the medical standard was so well established" by precedent "that the failure to prescribe the course of treatment could only be considered deliberate indifference within the meaning of the Eighth Amendment." *Id.* at 661.

After observing the constitutionality of hepatitis treatment priority policies is an "open question," the Court concluded by stating: "For our purposes, it is sufficient to observe that no decision of the Supreme Court, our court, or a 'consensus of courts' would have put Dr. Aranas on notice that treatment prioritization schemes like MD 219 violated the Eighth Amendment. Dr. Aranas is entitled to qualified immunity." *Id.* at 662-63.

*Hart v. City of Redwood City*, involved an officer's use of deadly force against a man attempting to commit suicide in his backyard with a knife as he approached the officers while raising the knife. 99 F.4th 543, 545 (9th Cir. 2024). This Court found "none of the cases Plaintiffs identify would have put [the officer] on notice that his actions in this case would be unlawful." *Id.* at 555. Like in *Cuevas*, this Court proceeded to factually distinguish each case the plaintiff cited finding each insufficiently factually similar. *Id.* at 555-57.

In *Martinez v. High*, the plaintiff was in a physically and sexually abusive relationship with City of Clovis Police Officer Kyle Pennington and she anonymously contacted the Clovis Police Department to *confidentially* report the abuse was continuing. 91 F.4th at 1025. In a phone call between Pennington and his colleague Officer High on speakerphone in front of plaintiff, Pennington confronted plaintiff, asking if she was "telling the cops" about his abuse. *Id.* at 1026.

When plaintiff said "no," High disclosed plaintiff's confidential report to Pennington, stating: "Yes, she did. I see a report right here." *Id.* As a result of High's disclosure to Pennington, plaintiff endured additional abuse until Pennington was arrested after an "especially brutal beating." *Id.*

This Court found High placed plaintiff "in greater danger" by disclosing her confidential complaint to Pennington while conveying contempt for her and that High was deliberately indifferent to a known or obvious risk. *Id.* at 1029-30.

However, this Court found High entitled to qualified immunity because plaintiff's constitutional right was *not* "clearly established" when he engaged in the challenged conduct. While acknowledging *Kennedy,* 439 F.3d 1055 involved a police officer disclosing a report to an alleged perpetrator was factually close, it did not involve sufficiently

"similar circumstances" to put the constitutional violation "beyond debate" under the specific facts of the present case. *Martinez,* 91 F.4th at 1032.

In *Kennedy,* a mother complained to police that her daughter was molested by a neighbor. *Id.* at 1057. After being told by police of the mother's accusations, the neighbor boy got a gun and shot the victim's parents. *Id.* The officers not only told a violent perpetrator about the plaintiff's allegations without giving her "a reasonable opportunity to protect her family" despite promising to do so, but they also misrepresented the level of danger by assuring her they would patrol the neighborhood. *Id.* The latter fact "was an additional and aggravating factor" that made the plaintiff and her family "more vulnerable to the danger." *Id.*

This Court concluded that "[g]iven the officers' specific false assurances that affected the plaintiff's choices" in *Kennedy* were not present, "we cannot say that 'every reasonable official would have understood' from *Kennedy*

51

that an officer violates the constitution by disclosing a report to a violent perpetrator." *Id.* at 1032.

The requirement of non-factually distinguishable precedent to alert law enforcement officers that their specific conduct is unlawful is particularly well illustrated by *Perez,* 98 F.4th 919.

Perez was under the influence of methamphetamine and suffering from a mental health crisis. *Id.* at 922. Officers took Perez to the ground, called for an ambulance, and handcuffed him while awaiting medical aid. *Id.* However, Perez stood up and continued to resist. *Id.* When EMS arrived, paramedics retrieved a backboard and told officers they were going to backboard him while he was lying face down. *Id.* at 923.

As Perez continued to resist and yelled that he could not breathe, paramedics requested assistance from the officers in restraining him and asked another officer to sit on the backboard, which he did while the other officers applied

pressure. *Id.* After the seated officer stood up, the paramedics continued to secure Perez to the backboard. *Id.* Upon being turned over, Perez was pulseless. *Id.*

Plaintiff relied on *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) to show clearly established law. *Perez,* 98 F.4th at 925.

In *Drummond*, a man was experiencing a severe mental episode, started hallucinating and became paranoid. 343 F.3d at 1054. Officers took him into custody for his own safety and "knock[ed] Drummond to the ground [,] where the officers cuffed his arms behind his back as Mr. Drummond lay on his stomach." *Id.* Officers placed their weight on his back and neck. *Id.* at 1054-55. Drummond repeatedly told the officers that he could not breathe. *Id.* Eventually, he passed out and suffered permanent brain damage. *Id.* at 1055.

Not surprisingly, this Court saw the screamingly obvious parallels with *Drummond* observing "many of the facts in *Drummond* are disturbingly similar to this case."

*Perez*, 98 F.4th at 926. In both cases, officers put downward body pressure on individuals experiencing a mental health episode who stated that they could not breathe.

Nonetheless, this Court found the key *factual difference* in *Drummond*; the restraint occurred *before* paramedics arrived and the officers were not acting at the direction of medical personnel. *Id. Drummond* thus *did not* put the officers on fair notice that their actions—pressing on a backboard on top of a prone individual being restrained for medical transport, *at the direction of a paramedic working to provide medical care*—was unlawful because prior cases must articulate a constitutional rule specific enough to alert the deputies that their particular conduct was unlawful, which *Drummond* – similar as it was – did not. *Id.*

The unavoidable takeaway from these recent decisions, which adhere to Supreme Court precedent, is that a factually distinguishable case does not overcome the presumption of qualified immunity. That core constitutional principle is fatal to Long's claims.

**B.** **The District Court's Faulty "Clearly Established"**
**Analysis Relied On General Constitutional**
**Principles And Cases With Materially**
**Distinguishable Facts**

Finding it was "clearly established" in 2003 that the

Officers' conduct was unconstitutional, the district court

(again) performed the analysis the Supreme Court rejects –

reliance on general constitutional principles divorced from

the actual conduct underlying the constitutional claims.

The district court not only failed to define the

constitutional violation in terms of each officer's "particular

conduct" but also failed to examine whether precedent

existing in 2003 placed "beyond debate" the wrongfulness of

each officer's "particular conduct" in "the specific context of

[this] case." *Wesby*, 583 U.S. at 63; *Mullenix*, 577 U.S. at 12;

*Cuevas*, 107 F.4th at 898.

The district court's errors are likely traceable to a

fundamental misunderstanding of what constitutes "clearly

established" law under Supreme Court precedents.

Quoting from a 1991 decision from this Court, the

district court articulated its understanding of the "clearly

established" analysis: "'[T]he proper fact-specific inquiry …

*is not whether the law is settled*, but whether, in light of

clearly established law and the information available to him,

a reasonable person in [the defendant's] position could have

objectively believed his actions to be proper.'" ER-12

(emphasis added) (quoting *Floyd v. Laws*, 929 F.2d 1390,

1394 (9th Cir. 1991)).

Regardless of whether *Floyd* correctly articulated in

1991 that the law need not be "settled" to be "clearly

established," it is most certainly *not* correct today.

The Supreme Court in no uncertain terms requires

"*settled law*," a proposition this Court now fully embraces.

*Wesby*, 583 U.S. at 63 (emphasis added); *see, e.g., Hopson v.*

*Alexander*, 71 F.4th 692, 697 (9th Cir. 2023) ("a rule is only

clearly established if it has been *'settled'* by 'controlling

authority' or 'a robust consensus of cases of persuasive

authority that 'clearly prohibit[s] the officer's conduct in the

particular circumstances,' with 'a high degree of specificity'")

(emphasis added) (quoting Wesby, 583 U.S. at 63);

*Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) ("The right must be *settled law* ....") (citing *Wesby*, 583 U.S. at 63) (emphasis added).

Regarding Longs' suppression of evidence claim asserted against Weeks, Anderson, Newman and Bloomfield, the district court first referenced the general rule regarding suppression of evidence from *Brady v. Maryland*, 373 U.S. 83 (1963) and then said: "Courts have found that *Brady* also made it clear to reasonable police officers that withholding material, exculpatory evidence during an investigation is unlawful." ER-16. From that, the district court found "[t]his right was clearly established in 2003." ER-16 (citing *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1219 (9th Cir. 2015) and *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018)).

The so-called clearly established right the district court found was the general constitutional rule that officers must comply with *Brady*, which is patently insufficient for a "clearly established" analysis.

Critically, the district court never analyzed whether precedent existing in 2003 would have clearly told the Officers that *Brady* required disclosure of the material Long alleges was suppressed.

Regarding this failure, the district court's citation to *Carrillo* is notable because *Carrillo* specifically *mandates* the analysis the district court avoided. 798 F.3d at 1223 ("Even though it was clearly established at the time of the investigations that police officers were bound to disclose *Brady* evidence, *we must next consider whether every reasonable police officer would have understood the specific evidence allegedly withheld was clearly subject to Brady's disclosure requirements*.") (emphasis added).

Regarding Long's fabricated evidence claim against Weeks, the district court stated the "'virtually self-evident' proposition that there is a 'constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government'

was clearly established" and, as such, "[t]his right was clearly established at the time of the 2003 investigation." ER-19 (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

Once again, the district court relied on a general statement of constitutional law without examining whether controlling precedent existed in 2003 holding Weeks' alleged conduct unconstitutional.

Even more, the district court misunderstood Weeks' argument, as reflected by the following: "'It is not necessary as [the Officer defendants] suggest[ ], that there be a case establishing that it is unconstitutional to fabricate every particular type of evidence.'" ER-20 (original alterations) (quoting *Wilkins v. Vandiver*, 2022 U.S. Dist. LEXIS 235730, at *23 (C.D. Cal. Oct. 25, 2022)).

As discussed later, Long's fabrication of evidence claim is a circumstantial fabrication claim based on Weeks coercing witnesses into giving false testimony. Weeks' argument was not focused on a "particular piece of evidence."

59

Because it is the "particular conduct" that is relevant to the "clearly established" analysis, Weeks argued (and argues here) the absence of controlling precedent in 2003 telling Weeks what he was doing (at least as Long alleges) when interviewing witnesses was unconstitutionally coercive.  *See* ECF Doc. 71-1, pp. 22-23.

Regarding Long's failure to collect and preserve evidence claim against Anderson, Newman and Verdugo, the district court said: "It was clearly established in 2003 that it was unlawful to fail to preserve or collect potentially exculpatory evidence."  ER-24 (citing *Miller v. Vasquez*, 868 F.2d 1116, 1121 (9th Cir. 1989) and *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

Yet again, the district court improperly relied on the general constitutional rules from *Youngblood* and *Miller* divorced from the facts and circumstances of this case.

The district court further erred in relying on Long's allegations of bad faith in finding the law in 2003 "clearly established."  ER-25 (Long's "claim is not that [the officer]

violated her constitutional rights by failing to collect all fingerprints at the crime scene, but rather that [he] did so by *in bad faith* failing to collect fingerprints from particular areas *that he knew at that time* could be potentially exculpatory.") (original emphasis).

The district court's reasoning swallows the "clearly established" standard because, under that reasoning, a sufficiently alleged fabrication claim will *always* overcome qualified immunity, which is why that reasoning has been rejected. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) ("a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense."); *Burgan v. Nixon*, 711 F. App'x 855, 858 (9th Cir. 2017) ("But even well-pleaded allegations of bad faith do not automatically defeat qualified immunity; rather, the immunity analysis asks whether the defendant's conduct violates clearly established rights of which a reasonable

person would have known. A right is clearly established when its contours are so clear that every reasonable official would have understood that what he is doing violates that right.") (simplified).

## C. Long Failed To Plausibly Allege Weeks Fabricated Evidence In Violation Of Her Fourteenth Amendment Rights Under "Clearly Established" Law Existing In 2003

One has a "constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux,* 263 F.3d at 1074-75. A plaintiff must establish "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

Deliberate evidence fabrication can be shown directly or circumstantially. *Richards v. County of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022).

Direct fabrication exists when an officer personally fabricates evidence. *See, e.g., id.* at 570 (planting evidence);

*McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (testifying falsely at trial); *Spencer*, 857 F.3d at 789 (false statements in report); *Costanich v. Department of Soc. & Health Servs.*, 627 F.3d 1101, 1107 (9th Cir. 2010) (deliberately misstating witness statements in report).

Circumstantial fabrication can be shown in two ways: (1) when an officer continues an investigation into a suspect when the officer knows or should know of the suspect's innocence; or (2) when an officer uses "investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076; *Spencer*, 857 F.3d at 799.

## 1.    Failure to allege a plausible claim

Long alleges Weeks coerced witness Jeff Dills (who was with Long immediately before the murder) into adopting a false "timeline" to implicate Long by threatening him with prosecution; that Weeks manipulated, coerced, and fed information to neighborhood witnesses to alter the "timeline"

of witness observations the night of the murder to conform to the timeline Weeks wanted, and that Weeks coerced witness Oscar Castenda into providing an alibi for Sheana Lovejoy by telling him Long was pointing the finger at her for the murder.  ER-46-49 ¶¶ 56-68.

Because Long does not allege any direct evidence fabrication by Weeks, she maintains a circumstantial fabrication claim based on coercion.  And the evidence she contends Week's "fabricated" consists of allegedly false witness testimony.

Long fails to plausibly allege Weeks interviewed any witnesses when he knew or should have known of her innocence, and indeed, Long never alleges when Weeks conducted the interviews.  Long must thus plausibly allege the "investigative techniques" Weeks used "were so coercive and abusive that [he] knew or should have known that those techniques would yield false information."  *Devereaux*, 263 F.3d at 1076.  She does not.

It is well established that overbearing, aggressive or coercive interviewing tactics – which is what Long alleges Weeks did – cannot alone establish circumstantial fabrication of evidence. *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003); *Devereaux*, 263 F.3d at 1077.

This is because coercion and fabrication are different. As the Seventh Circuit aptly explained: "[C]oercive interrogation techniques [are] insufficient to find fabrication of evidence" because "[c]oerced testimony is not necessarily fabricated." *Coleman v. City of Peoria*, 925 F.3d 336, 346 (7th Cir. 2019); *see also Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) ("We have indeed drawn a distinction between a coercion case for which there is no cognizable due process claim and an evidence fabrication case where there is a cognizable claim.") (simplified).

"A reluctant witness or co-conspirator whose testimony an officer must pry out through aggressive interrogation techniques may be telling the truth despite the measures used. Fabricated testimony, meanwhile, is invariably false

because it is made up by the officer, who knows he is making it up." *Coleman*, 925 F.3d at 346.

"'Coercively interrogating witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation even when their fruits are introduced at trial." *Id.* Evidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true." *Id.*; *see also Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1120 (9th Cir. 2018) ("[W]hile paying a witness for testimony may create adverse incentives to provide false statements, paying a witness alone does not violate due process.").

Because coerced testimony does not equal false testimony, this Court requires a plaintiff to show "investigative techniques that were so coercive and abusive that [the officer] knew or should have known that those techniques would yield false information." *Devereaux*, 263

F.3d at 1076; *Spencer*, 857 F.3d at 799; *see Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (plaintiff must "produce more than mere allegations that [an officer] used improper interview techniques"); *id.* (Although officer "told [the child victim/witness] that she could not leave" the hospital where she was staying for behavioral and drug problems "until she confessed to the abuse[,] [that] conduct, while inappropriate, does not satisfy *Devereaux*" because it is "not so coercive and abusive that [the officer] knew or should have known that he would receive false information.").

Regarding neighborhood witnesses, Long does not allege any facts identifying what Weeks did to "coerce" them into overcoming their own free will such that they provided false testimony about what and when they heard or saw certain things. The absence of these factual allegations renders the "coercion" and "manipulation" allegations nothing more than improper conclusions and certainly does not plausibly allege "coercive and abusive" interviewing techniques that Weeks "knew or should have known …

67

would yield false information." *Devereaux*, 263 F.3d at 1076; *Cunningham*, 345 F.3d at 812.

Nonetheless, Long's defense at trial was always that the timeline was incorrect and she examined the neighborhood witnesses at trial on the timing of their observations. ER-161-169 (listing witnesses); *see also* ECF Doc. 30-1, pp. 59-93, 221-256 (witness testimony); ECF Doc. 30-4, pp. 233-264 (same).

Long thus had the opportunity to discredit the allegedly false witness testimony used to create the so-called "false timeline" and to diminish its importance by showing fabrication. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) ("the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable"); *Hendricks v. Calderon*, 70 F.3d 1032, 1044 (9th Cir. 1995) ("the prosecution's devastating cross-examination may have left the jury with the impression that Hendricks' unfortunate history was all a fabrication").

68

Long's ability to cross-examine witnesses establishes the absence of a due process violation. *Williams*, 384 F.3d at 569.

Long alleges Weeks told Casteneda he needed to alibi Lovejoy (his girlfriend). ER-46-47 ¶ 58.

But that is not coercive or abusive and cannot be equated with fabricating evidence. Asking for alibis to clear suspects is something investigators do every day whether someone else is pointing at a particular suspect or not. That Lovejoy and Castenda were in a relationship makes no difference. Indeed, a significant other is the first place an officer should go.

And like the neighborhood witnesses, Castenda was cross-examined at trial by Long on the alibi issue, so Long had the chance to discredit Castenda's alibi for Lovejoy. ER-248-264; *see also* ECF 30-2, pp. 140-153 (Lovejoy's testimony regarding her alibi).

Long alleges Weeks threatened Dills with prosecution. But that tactic is also commonplace, whether Weeks believed

Dills was a suspect or not, and thus cannot be so coercive or abusive that Weeks knew or should have known it would yield false information. *See Cunningham,* 345 F.3d at 810 ("[O]fficers are allowed to play upon the suspect's fear of prison.") (citing *United States v. Sablotny*, 21 F.3d 747, 752-53 (7th Cir. 1994)); *id.* ("[Officer's] statement that he has put people in prison did not contribute to undermining Cunningham's free will. Officers are allowed to recite the sentence a suspect may receive if found guilty."); W*illiams v. Woodford*, 384 F.3d 567, 594 (9th Cir. 2002) ("An interrogating agent's suggestion that a suspect's cooperation with the government will have a positive effect on the suspect's possible sentence is not an improper inducement that causes the suspect's later testimony for the government to be involuntary.").

This Court requires much more than a mere threat of prosecution to establish coercion sufficient to support a fabrication of evidence claim. *Cf. Gantt v. City of Los Angeles*, 717 F.3d 702, 704, 708 (9th Cir. 2013) (coercion

shown when detectives interrogated eyewitness after "he had been awake for approximately two days straight on a crack binge" and "was still under the influence" when identifying suspects, threatened to charge him with murder if he did not identify the suspect, interrogated him on multiple days for hours at a time); *Williams*, 384 F.3d at 595 ("[T]he beatings, threatened murder charge, and offer of immunity in exchange for Coleman's testimony against Williams were coercive and rendered involuntary Coleman's statements incriminating Williams at the 1979 interrogation.").

Because Dills died before trial, his preliminary hearing testimony was read into evidence and Long's counsel cross-examined Dills at the preliminary hearing on the "timeline." *In re Long*, 10 Cal. 5th at 771; ER-72-125, 143. Moreover, an issue was raised during Long's sentencing regarding coercion. Long's attorney reviewed Dills' videotaped interviews and conceded the *absence* of coercion. ER-148-156. Given those two things and Dill's death, Long can

never establish that Dill's gave false testimony and, even if he did, that it was because of Week's so-called coercive conduct.

## 2. Failure to demonstrate "clearly established" law in 2003

As a *general proposition*, fabrication of evidence to arrest, prosecute, or convict is unconstitutional. But as explained earlier, general constitutional propositions do *not* control the qualified immunity analysis. *Rivas-Villegas*, 595 U.S. at 5; *Spencer*, 117 F.4th at 138; *Hamby*, 821 F.3d at 1091. "The dispositive question is …whether the violative nature of particular conduct is clearly established in the specific context of the case." *Cuevas*, 107 F.4th at 898 (simplified).

Examining the controlling "precedent on the books" in 2003 cited by Long demonstrates none of it "would have made clear to [Weeks] that [his] actions violated the Constitution." *Carley*, 103 F.4th at 661. All of it is too factual dissimilar to constitute clearly established law.

*Rivas-Villegas*, 595 U.S. at 5-6; *Spencer*, 117 F.4th at 1138; *Carley*, 103 F.4th at 661; *Hopson*, 71 F.4th at 702, 704.

Because Long does not adequately allege what Weeks did to the neighborhood witnesses that supposedly made his conduct coercive, it is impossible to conclude the unconstitutionality of what Weeks did was "beyond debate" in 2003. *Wesby*, 583 U.S. at 63.

Long alleges Weeks coerced Castenda into providing a false alibi for Lovejoy by telling him Long was blaming Lovejoy for the murder, and Weeks coerced Dills into providing a "false timeline" by threatening him with prosecution.

Long must therefore identify a case existing in 2003 holding Weeks' techniques (the particular conduct at issue) were "so coercive and abusive" in the context of a murder investigation (the specific context of this case) "that [Weeks] knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076; *see Cuevas*, 107 F.4th at 898.

Long did not.

Long relied on the following cases existing in 2003:

*Pyle v. State*, 317 U.S. 213 (1942), *Napue v. Illinois*, 360 U.S. 264 (1959) and *Devereaux*, 263 F.3d 1070. ECF Docs. 83, p. 13, 144 p. 11.

*Devereaux* does not help Long because the Court found "aggressive questioning of a child" causing the child to change a statement neither coercive nor abusive. 263 F.3d at 1076-77. It's too factually dissimilar.

And *Devereaux's* generalized statement of constitutional law divorced from the specific conduct and specific circumstances at issue no longer suffices for "clearly established" law under the Supreme Court's modern qualified immunity precedents. *Carley*, 103 F.4th at 660-61; *Martinez*, 91 F.4th at 1031-32; *see, e.g., Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017) ("The right 'to be free from coercive interrogation' is highly generalized. Therefore, it cannot be the basis for defeating a qualified immunity defense, unless there is closely analogous

precedent that is 'particularized' to the facts of the instant case.") (citing *White*, 580 U.S. at 79).

*Napue* likewise does not help Long because the case involved a prosecutor's failure to correct known false witness testimony, which is not at issue here and thus factually inapt.  317 U.S. at 268-69.  Nor does *Pyle* help Long because it was a habeas case remanded for consideration of a fabricated evidence claim without a finding on whether any interviewing technique was improper.  317 U.S. at 268-69.

**D.    Long Failed To Plausibly Allege Anderson, Newman, Or Verdugo Failed To Collect Or Preserve Evidence In Violation Of Her Fourteenth Amendment Rights Under "Clearly Established" Law Existing In 2003**

Long alleges Anderson, Newman, and Verdugo "purposefully failed to collect, or to cause to be collected, evidence that they knew would detail who was present at the time of the murder with Conde, such as fingerprint impressions and/or DNA from: (1) the door and doorknob used by the perpetrator to gain access to the home; (2) the door and doorknob leading from the garage into the house

which had been propped open during the assault; (3) the closet door in the master bedroom which contained a shotgun that Defendants knew had gone missing at the time of the murder; and (4) the kitchen cabinet which contained a change bowl associated with alternate suspect Bugarski that disappeared in connection with the murder." ER-49-50 ¶ 72. According to Long, this "denied [her] access to evidence that would have shown the presence and identity of others at the scene of the crime with Conde at the time of his death, and exonerated her." ER-50 ¶ 73.

Long further alleges Anderson, Newman, and Verdugo "purposefully ... destroyed physical evidence including a champagne bottle and cup found at the house with Conde that, had it been tested, would have shown that other individuals had been present with Conde at the time of the crime and identified them." ER-49 ¶ 69.

According to Long, this was all done "because they could already tie [her] ... to the scene of the crime based on her discovery of the body at her residence, and did not want

to generate evidence that would call into question [her] guilt and implicate any additional suspects."  ER-49 ¶ 71.

## 1.    Failure to allege a plausible claim

At bottom, Long alleges Anderson, Newman, and Verdugo failed to collect or preserve evidence that, if tested, would have revealed others at the house and "exonerated" her.  The claim fails.

Officers are not constitutionally required to collect or preserve *any* item of evidence.  *Miller,* 868 F.2d at 1119-20; *see Youngblood,* 488 U.S. at 58 (observing "our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause, [citation], as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.").

Failing to collect or preserve evidence violates due process only when an officer *in bad faith* fails to collect or preserve what the officer *knows at the time* is exculpatory

evidence. *Youngblood*, 488 U.S. at 56-58; *Cunningham.* 345 F.3d at 812.

"[I]n the absence of bad faith, the police's failure to preserve evidence that is only potentially exculpatory does not violate due process, then a fortiori neither does the good faith failure to collect such evidence violate due process." *Miller,* 868 F.2d at 1120; *United States v. Robertson*, 895 F.3d 1206, 1211 (9th Cir. 2018) ("[W]ithout knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith.").

Thus, uncollected or destroyed evidence "must both possess an exculpatory value that was apparent before the evidence was [not collected] or destroyed, and be of such a nature that a defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *see Cooper v. Calderon*, 255 F.3d 1104, 1113 (9th Cir. 2001) ("The duty to preserve evidence is limited to material evidence, i.e., evidence whose exculpatory value was apparent before its

destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources.").

As a further limitation on an obligation to collect and preserve evidence, "[t]he exculpatory value of an item of evidence is not 'apparent'" to an officer "when the evidence merely 'could have' exculpated the defendant." *United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008) (quoting *Youngblood*, 488 U.S. at 56). "[T]hat the evidence may have proven exculpatory ... does not render it per se material." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1087 (9th Cir. 2004).

Thus, a viable failure to collect or preserve evidence claim requires Long to plausibly allege: (1) Anderson, Newman, and Verdugo each failed to collect or preserve exculpatory evidence; (2) Anderson, Newman, and Verdugo each knew of the evidence's exculpatory value at the time; and (3) she was unable to obtain comparable evidence.

Long's allegations are insufficient for many reasons.

First, if Long in any way bases her claim on a failure to test evidence, "the police do not have a constitutional duty to perform any particular tests." *Youngblood*, 488 U.S. at 59; *see Moore v. City of Oakland*, 242 F. Supp. 3d 891, 902 (N.D. Cal. 2017) ("Plaintiff cites no authority establishing an obligation of the police to test DNA evidence ....").

Second, Long's assertion that uncollected or destroyed evidence "would have exonerated" her if tested by "showing" others were at the crime scene is an insufficient conclusion based on speculation because Long alleges no facts plausibly suggesting anyone other than her was at the crime scene.

Moreover, Long alleges no facts suggesting how the presence of others at the crime scene "would have exonerated her" in the murder of her live-in boyfriend at her house.

Given Long was at the crime scene, this is unsurprising. Just as Long would have it, one's presence at the crime scene does not necessarily mean that person

committed the murder. And Long certainly could have committed the murder even if others had been present.

Third, it is impossible to say the evidence "would have exonerated" Long. This is because "the value of the untested evidence is speculative." *Cunningham*, 345 F.3d at 812. "It could have exonerated [Long], but it also could have incriminated [her]." *Id.* As such, "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" does not violate the due process clause. *Youngblood*, 488 U.S. at 57; *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) ("'[E]vidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation.'").

Indeed, the speculative nature of what blood or DNA evidence might have shown is even more pronounced when looking at the time frame of the murder. What DNA testing can do now is leaps and bounds beyond what it was in 2003.

Fourth, Long alleges no facts implying Anderson, Newman, or Verdugo knew or should have known about the presence of someone other than Long at the crime scene. Presumably, the scene was processed right after the murder. Long alleges no facts plausibly suggesting that, at that time, Anderson, Newman, or Verdugo knew or should have known about the presence of others, or that a shotgun and change bowl were missing. Long merely concludes they knew it without providing any factual detail supporting the conclusion. The same is true regarding the bottle and cup because Long does not allege when they were destroyed.

Fifth, Long fails to allege "bad faith" by Anderson, Newman, or Verdugo. Bad faith means "official animus" or "a conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488-89. Bad faith is shown when "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58; *Miller*, 868 F.3d at 1121. To plead bad faith, Long must "'put forward specific,

nonconclusory factual allegations that establish improper motive.'" *Cunningham*, 345 F.3d at 812; *Gausvik,* 345 F.3d at 818.

Long only alleges Anderson, Newman, and Verdugo did not want to develop exonerating evidence. But one cannot logically infer from that a bad faith failure to collect or preserve evidence in violation of the constitution because Long alleges no facts suggesting a plausible reason. Long alleges *no* facts detailing why *she* was the desired suspect to the exclusion of everyone else. And it cannot be doubted that Long was a viable and good suspect for Conde's murder.

The lack of "specific, nonconclusory factual allegations" supporting even an inference that Anderson, Newman, or Verdugo knew they failed to collect or preserve exculpatory evidence renders Long's claim insufficiently pled. *Cunningham*, 345 F.3d at 812 ("Cunningham has not alleged specific, nonconclusory facts showing [the officer] engaged in 'a conscious effort to suppress exculpatory evidence.'") (quoting *Trombetta*, 467 U.S. at 488).

*Cunningham* is instructive. In *Cunningham*, the plaintiff alleged the officer "failed to gather any physical evidence, such as bed sheets or clothing, which could have exonerated [him]." 345 F.3d at 812. This Court found the allegation insufficient to plead bad faith "because the value of the untested evidence is speculative. It could have exonerated [plaintiff], but it also could have incriminated him. While [the officer's] investigative work may have been negligent or incomplete, it was not conducted in bad faith." *Id.* The Court concluded plaintiff had "not alleged specific, nonconclusory facts showing [the officer] engaged in 'a conscious effort to suppress exculpatory evidence.'" *Id.* (quoting *Trombetta*, 467 U.S. at 488).

The same is true here. What Long alleges "can at worst be described as [a] negligent" or an "incomplete" investigation, neither of which violates due process. *Youngblood*, 488 U.S. at 58; *Cunningham*, 345 F.3d at 812; *see Richards v. County of San Bernardino*, No. 19-56205, 2022 U.S. App. LEXIS 17535, at *6 (9th Cir. June 24, 2022)

(unpub.) ("Failing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; failing to collect or preserve evidence in bad faith is quite another.").

And, finally, Long alleged no facts showing her inability to obtain comparable evidence. *Trombetta*, 467 U.S. at 489. Long does not allege destruction or compromise of the fingerprints and blood in her home. Long does not allege an inability to access the crime scene to collect and test whatever fingerprint and DNA evidence she wanted. This omission is particularly poignant given the crime occurred *in Long's home*. Nor does Long allege not having access to the bottle and cup before it was destroyed. Without that allegation, it is equally plausible the bottle and cup were available to her before they were allegedly destroyed.

## 2. Failure to demonstrate "clearly established" law in 2003

Although the Supreme Court in *Trombetta* and *Youngblood* held a bad faith failure to preserve evidence may violate due process, neither case dealt with collecting

85

evidence. *See Miller*, 868 F.2d at 1119-20 (discussing *Trombetta* and *Youngblood*); *id.* at 1119 ("Miller has not cited a case, nor have we found one, which holds that the due process clause is violated when the police fail to gather potentially exculpatory evidence. On the contrary, the cases we discovered hold to the contrary.").)

The Supreme Court has never held failing to collect evidence could violate the due process clause, but in 1989 this Court did in *Miller*, 868 F.2d at 1120.

Thus, *generally* in 2003, an officer must collect and preserve evidence the officer knows or should know is exculpatory.

However, the issue here is more *specific* than that general rule. *Rivas-Villegas*, 595 U.S. at 5; *White*, 580 U.S. at 79; *see Carrillo*, 798 F.3d at 1219, 1233 (general rule that *Brady* requires disclosure of exculpatory evidence cannot defeat qualified immunity); *Gill*, 850 F.3d at 341 (same, regarding coercive interrogations).

Thus, given Long's allegations, the issue is whether it was "clearly established" in 2003 that the Fourteenth Amendment required officers to collect and preserve all fingerprints and blood evidence at a crime scene because testing of that evidence *might* assist a defendant by pointing to another suspect.

There was no such law in 2003, and Long did not meet her burden to show clearly established law.

Insufficient was Long's citation to *Youngblood*, *Trombetta*, *Miller*, and *United States v. Cooper*, 983 F.2d 928 (9th Cir. 1993) because she relied on all for the general proposition that bad faith failure to collect or preserve exculpatory evidence violates the due process clause. ECF Docs. 85, p. 27, 114, p. 17.

Long cited no cases establishing any obligation to collect fingerprints or blood at a crime scene because it *might show* another person at a crime scene. Nor did she cite any case involving a failure to preserve evidence *potentially showing* involvement of someone else in a crime.

87

Although the general constitutional rule requiring collection and preservation of evidence existed in 2003, no controlling precedent would have made it clear to "every 'reasonable official'" that Anderson, Newman and Verdugo were violating Long's constitutional rights when they failed to collect blood or fingerprint evidence or preserve a bottle and cup under the facts Long alleges. *al-Kidd*, 563 U.S. at 741.

### E. Long Failed To Plausibly Allege Anderson, Weeks, Or Bloomfield Suppressed Evidence In Violation Of Her Fourteenth Amendment Rights Under "Clearly Established" Law Existing In 2003

### 1. Failure to allege a plausible claim

Under *Brady*, "suppression … of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." 373 U.S. at 87. *Giglio v. United States,* 405 U.S. 150 (1972) extended *Brady* to impeachment evidence.

"The elements of a civil *Brady/Giglio* claim against a police officer are: (1) the officer suppressed evidence …

favorable to the accused …, (2) the suppression harmed the accused, and (3) the officer 'acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors.'" *Mellen,* 900 F.3d at 1096 (citation omitted).

Suppressed evidence is only "favorable" when it is exculpatory or impeaching. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "To determine whether prejudice exists" from the suppression of "favorable" evidence, a court "look[s] to the materiality of the suppressed evidence." *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008).

"Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 324 (2017) (simplified).

"A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Id.* (simplified); *Hooper v. Shinn*, 985

F.3d 594, 620 (9th Cir. 2021) ("A *Brady* violation occurs when the undisclosed favorable evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'").

But "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

Deliberate indifference is a "conscious or reckless disregard of the consequence of one's acts or omissions." *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014). "It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or without knowledge that harm will result." *Id.*

Long's claims against Anderson, Weeks, and Bloomfield fail for several reasons.

Long alleges Anderson, Weeks, and Bloomfield suppressed evidence indicating they *thought* witnesses were lying and "doubted their alibis" and that Weeks suppressed that he "wouldn't be surprised if" one of the witnesses "was involved in the murder." ER-43 ¶¶42, 43, 46.

None of that is *Brady* material; it is neither exculpatory nor impeaching. *United States v. Olsen*, 704 F.3d 1172, 1183-84 (9th Cir. 2013). Moreover, *Brady* does not require disclosing beliefs or opinions about witness credibility. *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) ("strategies, legal theories, or impressions of the evidence" is not *Brady* material). And an officer's opinion on witness credibility is neither admissible nor impeachment evidence *United States v. Sanchez*, 176 F.3d 1214, 1220 (9th Cir. 1999). Likewise inadmissible is an officer's *speculation* about a witness's possible involvement in a crime. *See* Fed. R. Evid. 701.

Long further alleges Anderson and Weeks deprived her of impeachment evidence by suppressing Lovejoy's prior lies about vandalizing Conde's truck. ER-43 ¶¶ 44, 45.

Long's allegation is demonstrably false. Long concedes Lovejoy admitted to vandalism at trial. ER-43 ¶ 44. The judicially noticeable criminal trial transcript confirms that. ER-219-220, 226-227. And Lovejoy's prior lies to the police were not suppressed. *In re Long*, 10 Cal. 5th at 770 ("In a police interview, Lovejoy said she had a great relationship with Conde until the last six months, when he moved in with Long. *Lovejoy admitted that she lied to the police* when they visited her house to investigate the vandalism of Conde's truck.") (emphasis added).

Ignoring all that, Lovejoy was impeached during trial. ER-168-178, 219-240. "Cumulative impeachment evidence is generally not material because the marginal effect of additional impeachment is relatively small and unlikely to result in a different outcome." *United States v. Emor*, 573 F.3d 778, 782 (D.C. Cir. 2009); *United States v. Vgeri*, 51

F.3d 876, 880 (9th Cir. 1995) (undisclosed impeachment evidence is immaterial and cumulative when the witness is already sufficiently impeached); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998) (same).

Even assuming suppression of Lovejoy's lies to police about vandalizing Conde's truck, the evidence is not material under *Brady*. *See United States v. Oruche*, 484 F.3d 590, 599 (D.C. Cir. 2007) (failure to disclose witness's admission she lied to police was not *Brady* violation because the witness was "thoroughly impeached" at trial). That additional piece of impeachment evidence certainly would *not* have resulted in Long's acquittal. *Vgeri*, 51 F.3d at 880 ("Withheld impeachment evidence must be material such that 'if disclosed and used effectively ... it may [have made] the difference between conviction and acquittal.'").

Long further alleges Bloomfield, Newman, Anderson, and Weeks suppressed evidence of Lovejoy's interview prior to her polygraph that "would have showed that police knew Lovejoy's alibi was implausible, that she had the opportunity

93

to commit the murder, and that she lacked credibility." ER-44 ¶ 50.

This allegation makes little sense, given an officer's opinion about a witness's credibility or potential involvement in a crime is not material evidence under *Brady*. *Morris*, 447 F.3d at 742.

Assuming Long meant to allege she could have used Lovejoy's prior interview to impeach her, Long had the interview and used it to impeach Lovejoy at trial. ER-169-176, 222-237.

Long additionally alleges Weeks, Anderson, and Bloomfield suppressed differing versions of Bugarski's alibi thus precluding her from using "inconsistent early accounts of his alibi" to impeach Bugarski at trial. ER-42 ¶¶ 47-49. Long, however, alleges no facts regarding differing alibis. Just saying differing alibis exist without any factual support is insufficient. Bugarski was also cross-examined at trial regarding his alibi, which was corroborated by another witness. ER-188-218.

Moreover, Long alleges no facts establishing prejudice from the suppressed evidence. That the evidence "might have helped … or might have affected the outcome of the trial" is insufficient. *Agurs*, 427 U.S. at 109-10.

Indeed, the prosecution's case against Long did not rest on the alibis of Bugarski and Lovejoy. *Cf. Gonzalez v. Wong*, 667 F.3d 965, 986 (9th Cir. 2011) ("Given the nature of Acker's testimony, a reasonable state court could conclude that Acker's testimony 'was the glue that held the prosecution's case together,' [citation], and that there is a reasonable probability that further impeachment of Acker could have resulted in a different outcome.").

Concluding the jury would not have convicted Long if the jury knew Lovejoy lied to police about a prior act of vandalism, something totally unrelated to Lovejoy's alibi, is not a plausible conclusion. Likewise implausible is the conclusion that the trial result would have been different had Long been able to impeach Bugarski with differing

versions of his alibi because his alibi, as noted earlier, was established through an independent witness.

Finally, Long makes no non-conclusory allegations suggesting Anderson, Weeks, or Bloomfield "'acted with deliberate indifference to or reckless disregard ... in withholding evidence from prosecutors.'" *Mellen*, 900 F.3d at 1096.

## 2. Failure to demonstrate "clearly established" law in 2003

The issue is "whether the evidence allegedly withheld [in this] case was clearly established to be *Brady* evidence" such that "every reasonable police officer would have understood the specific evidence allegedly withheld was clearly subject to *Brady's* disclosure requirements." *Carrillo*, 798 F.3d at 1219, 1223.

Long cited no precedent existing in 2003 holding *Brady* required disclosure of the evidence she alleges Anderson, Weeks, or Bloomfield suppressed.

Long cited these pre-2003 cases: *United States v. Bagley*, 473 U.S. 667 (1985); *Kyles v. Whitley*, 514 U.S. 419

(1995); *Strickler*, 527 U.S. 263; *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978); *Singh v. Prunty*, 14 F.3d 1157 (9th Cir. 1998), *Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002). ECF Docs. 84, pp. 26-27, 144, pp. 10-15.

*Bagley* involved failing to disclose witness payments. 473 U.S. at 671-72. *Kyles* involved prior statements from eyewitnesses impeaching their identification of the defendant. 473 U.S. at 441-54. *Strickler* involved documents created by an eyewitness, and notes from interviews with her where she conceded a poor memory. 527 U.S. at 266, 273-75. *Butler* involved promises to dismiss charges against a witness in exchange for favorable testimony. 567 F.2d at 886-88. *Singh* involved favorable treatment to witnesses in unrelated criminal cases. 142 F.3d at 1159 & n.3, 1161-62.

None of these cases defeat qualified immunity because none involve the "specific evidence allegedly withheld" by Anderson, Weeks, or Bloomfield. *Carrillo*, 798 F.3d at 1223. Neither payments, favorable treatment nor eyewitness

identification are at issue here. *See Rivas-Villegas*, 595 U.S. at 5-6; *Spencer*, 117 F.4th at 1138.

*Benn* involved a murder trial and an egregious failure to disclose impeachment evidence regarding a "'jailhouse informant'" to whom the defendant allegedly confessed. 283 F.3d at 1044-45; *id.* at 1054 ("The prosecution failed to disclose multiple pieces of critical impeachment information that could have been used to undermine the credibility of … a prosecution witness whose testimony was crucial to the state's claims of premeditation and common scheme or plan, as well as to the state's theory regarding [the defendant's] principal motive for killing the two individuals.").

The evidence the prosecutor failed to disclose involved the witness's "history of misconduct while acting as an informant," "experience as an informant," which included testifying at a different murder trial that the defendant made a jailhouse confession, "false allegations about [the defendant]," and "exposure to prosecution" and the beneficial treatment received by the prosecutor. *Id.* at 1049-58. The

prosecution also failed to disclose evidence undermining the theory the defendant committed the murder to cover up an arson insurance fraud scheme – reports suggesting the alleged arson fire was accidental. *Id.* at 1060.

The evidence withheld in *Benn* is materially different than the alleged withheld evidence here, and far more dramatic in scope and importance. *Benn* therefore does not help Long. *See Rivas-Villegas*, 595 U.S. at 5-6; *Spencer*, 117 F.4th at 1138.

Long cited one 2003 case, *Bailey v. Rae*, 339 F.3d 1007 (9th Cir. 2003). ECF Doc. 144, p. 11. *Bailey* was a sex crime case and involved the "State's non-disclosure of the therapist's reports relating to counseling sessions with the [crime] victim for prior sexual abuse in the years leading up to the events in question." *Id.* at 1114 ("Each report contained a professional analysis of not only Winters' general developmental status and her understanding of physical and moral aspects of physical contact, but also her capacity to consent to improper sexual advances--the

linchpin issue presented at trial."). *Bailey* has no application here.

Long cited three post-2003 cases: *Banks v. Dretke*, 540 U.S. 668 (2004), *Carrillo,* 798 F.3d 1210, and *Tennison v. City & County of San Francisco*, 570 F.3d 1078 (9th Cir. 2009). ECF Docs. 84, pp. 26-27, 114, p. 9. None help her.

Decided after 2003, neither *Banks* nor *Tennison* have any application to the determination of the state of the law in 2003. *Kisela*, 584 U.S. at 107. Regardless, both are factually distinct. *Tennison* involved suppressing a confession. 570 F.3d at 1093-94. No confession is at issue here. *Banks* involved the failure to disclose a witness was an informant that was "paid $200 for his involvement in the case" and a pretrial interrogation transcript demonstrating a witness "trial testimony was intensively coached by prosecutors and law enforcement officers" by instructing the witness on "how to reconcile his [trial] testimony with affidavits" previously given. 540 U.S. at 675, 685. The case also involved the prosecutor telling the jury the informant

was truthful despite the informant giving trial testimony the prosecutor knew was false. *Id.* at 675. That is not at issue here, nor is a paid informant. Likewise, not at issue is "coaching witnesses" on how to rectify trial testimony with prior sworn statements.

Decided in 2015, *Carrillo* did discuss the state of the law in 1984 and 1991 and found it clearly established in 1984 and 1991 that *Brady* required disclosing evidence undermining eyewitness identification of a defendant. 798 F.3d at 1226-28. *Carrillo* also found it clearly established in 1984 that *Brady* required disclosing evidence that "another man who resembled the eyewitness's description of the killer had previously tried to kill the victim." *Id.* at 1226. Again, eyewitness identification evidence is not the issue here.

**F.  Long's Fourth Amendment Malicious Prosecution Claim Against Anderson, Weeks, Newman, Bloomfield And Verdugo Fails To Plead A Plausible Claim Because They Are Immune For The Conduct Underlying This Claim**

A malicious prosecution claim requires showing a defendant prosecuted the plaintiff "'with malice and without

probable cause, and that they did so for the purpose of denying [her] equal protection or another specific constitutional right,'" *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019), such that it lead to "an unreasonable seizure of [her] person," *Chiaverini v. City of Napoleon*, 144 S. Ct. 1745, 1748 (2024). *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1015 (9th Cir. 2015) ("in addition to showing that the defendants prosecuted him with malice and without probable cause, a plaintiff must demonstrate a Fourth Amendment seizure (or the violation of another such 'explicit textual source of constitutional protection')").

Long's "legal theory" for this claim "is derivative of the others, meaning that the misconduct" underlying the separate Fourteenth Amendment claims "gives rise to the [malicious prosecution] claim under the Fourth Amendment." ECF Doc. 144, p. 18:15-18.

As already discussed, Long has not alleged a plausible constitutional violation under controlling law existing in

2003 by any officer under any of her Fourteenth Amendment claims.

This disposes of Long's malicious prosecution claim. *See McGuigan v. Cty. of San Bernardino*, 698 F. App'x 919, 920 (9th Cir. 2017) ("Because Defendants-Appellants are entitled to qualified immunity with regard to McGuigan's detention and arrest [claims], there is no basis for a malicious prosecution claim."); *Peck v. Hinchey*, 755 F. App'x 723, 723-24 (9th Cir. 2019) ("And because Plaintiffs' argument on appeal that Hinchey acted with malice is entirely dependent on the premise that Hinchey deliberately fabricated evidence, we affirm on the malicious prosecution claim as well.").

## CONCLUSION

Long failed to overcome the Officers' presumption of qualified immunity by failing to plausibly allege constitutional violations under controlling precedent existing in 2003 clearly establishing and placing beyond debate the

unconstitutionality of the conduct alleged against each officer.

The Officers said this earlier, but it is worth repeating it here. Precedent articulating general constitutional principals or precedent with dissimilar facts – which is what Long and the district court cited – do not defeat qualified immunity because such precedent is insufficient to meet the Supreme Court's demanding and exacting "clearly established" standard.

This district court erred in denying the Officers qualified immunity. This Court should reverse.

Respectfully Submitted,

Dated: December 9, 2024     Dean Gazzo Roistacher LLP

By: */s/  Lee H. Roistacher*
Lee H. Roistacher
Mitchell D. Dean
Attorneys for
Defendants/Appellants
Thomas Weeks; Ronald
Anderson; Daniel
Bloomfield; Robert
Newman; and Daniel
Verdugo

# CERTIFICATE OF COMPLIANCE PURSUANT TO

# FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1

# FOR CASE NO. 24-4427

Pursuant to Federal Rule of Appellate Procedure 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Appellants' Opening Brief is proportionately spaced, has a typeface of 14 points or more and contains 13,876 words.

Dated: December 9, 2024     Dean Gazzo Roistacher LLP


By:  */s/  Lee H. Roistacher*
Lee H. Roistacher
Mitchell D. Dean
Attorneys for
Defendants/Appellants
Thomas Weeks; Ronald
Anderson; Daniel
Bloomfield; Robert
Newman; and Daniel
Verdugo

## STATEMENT OF RELATED CASES UNDER NINTH CIRCUIT RULE 28-2.6

Defendants/Appellants Thomas Weeks; Ronald Anderson; Daniel Bloomfield; Robert Newman; Daniel Verdugo; Jeffrey Glenn are not aware of any related case currently pending in the Ninth Circuit Court of Appeals.

Dated: December 9, 2024    Dean Gazzo Roistacher LLP


By: */s/  Lee H. Roistacher*
  Lee H. Roistacher
  Mitchell D. Dean
  Attorneys for
  Defendants/Appellants
  Thomas Weeks; Ronald
  Anderson; Daniel
  Bloomfield; Robert
  Newman; and Daniel
  Verdugo

## CERTIFICATE OF SERVICE

Re:  *Kimberly Long v. Thomas Weeks, et al.*
United States Court of Appeals for the Ninth Circuit
Case No. 24-4427
USDC Case No. 5:21-cv-02008-FWS-E

I, Maria E. Kilcrease, declare:

That I am and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 440 Stevens Avenue, Suite 100, Solana Beach, California 92075 and my electronic address is mkilcrease@deangazzo.com.

On December 9, 2024, I served the following documents described as:

### APPELLANTS' OPENING BRIEF

on all interested parties in this action addressed as follows:

Steven Art
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
Tel: (312) 243-5900
E-mail: steve@loevy.com

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
Tel: (720) 328-5642
E-mail: elizabethw@loevy.com

Michael D. Seplow
Paul Hoffman
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Tel: (310) 396-0731
E-mail: mseplow@sshhzlaw.com
         hoffpaul@aol.com

Jan Stiglitz
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Tel: (619) 807-5890
E-mail: js@cwsl.edu

**Attorneys for Appellee**

John D. Higginbotham
Neil D. Okazaki
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel,: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
       neil.okazaki@coronaca.gov

**Attorneys for Appellants, Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, and Daniel Verdugo**

<u>X</u>      BY ELECTRONIC SERVICE: On the date stated above, I served the documents described above on designated recipients via CM/ECF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 9, 2024, at Solana Beach, California.

_____
Maria E. Kilcrease, declarant