No. 24-4427

─────────────────────────────────────────

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
─────────────────────

KIMBERLY LONG,

*Plaintiff-Appellee*,

*v.*

THOMAS WEEKS, *et al.*,

*Defendants-Appellants.*

─────────────────────

Appeal from the United States District Court
for the Central District of California
No. 5:21-cv-02008-FWS-E

─────────────────────────────────────────

ANSWERING BRIEF OF
PLAINTIFF-APPELLEE KIMBERLY LONG

─────────────────────────────────────────

Steve Art                          Jan Stiglitz (SBN 103815)
Justin Hill                        Law Office of Jan Stiglitz
Elizabeth Wang                     14462 Garden Tr.
LOEVY & LOEVY                      San Diego, CA 92127
311 N. Aberdeen St, Third Fl       Phone: (619) 807-5890
Chicago, Illinois 60607
(312) 243-5900

**February 7, 2025**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ......................................................... i

**TABLE OF AUTHORITIES** ................................................... i

**JURISDICTIONAL STATEMENT** ......................................1

**ISSUES PRESENTED** ..........................................................6

**STATEMENT OF THE CASE** ...............................................6

I.   OSWALDO CONDE IS MURDERED ..............................6

II.  DEFENDANTS RESPOND TO THE BLOODY CRIME SCENE .................7

III. LONG IS INNOCENT ......................................................8

IV. LEADS POINT TO ALTERNATIVE SUSPECTS ..........8

V.   THE DEFENDANT OFFICERS FRAME LONG ...........9

    A. Defendants Suppress Their Discovery and Report of Physical Evidence That Exonerates Long .........9

    B. Defendants Suppress Evidence about Lovejoy and Bugarski ...................11

        1. Suppressed Reports Identifying Alternative Suspects and Questioning Their Credibility .............11

        2. Suppressed Evidence About Bugarski's Alibi .................12

        3. Suppressed Evidence About Lovejoy's Alibi .................13

    C. Weeks Fabricates Witness Statements Implicating Long and Suppresses the Truth and Tactics He Used to Obtain Them .........13

        1. Fabricated Account for Long's Alibi Witness Dills .........14

        2. Fabricated Account for Lovejoy's Alibi Witness Castaneda .............15

        3. Fabricated Account for Linda Alexander ...........16

    D. Defendants Fail to Preserve Physical Evidence ...........17

VI. LONG'S WRONGFUL CONVICTION ........................18

VII.LONG FIGHTS FOR HER FREEDOM AND IS EXONERATED ...............19

**SUMMARY OF THE ARGUMENT** .................................21

**ARGUMENT** ......................................................................23

I.   THIS COURT SHOULD DISMISS DEFENDANTS' FACT-BASED APPEAL FOR LACK OF JURSIDICTION..................23

    A. Appellate Jurisdiction In Immunity Appeals Is Limited ...........23

i

B. Immunity Appeals That Contest Facts Should Be Dismissed ...................25

C. Appellants Present Factual Challenges, Not Legal Issues .........................26

D. This Court Should Dismiss for Lack of Jurisdiction ..................................31

II. ACCEPTING LONG'S ALLEGATIONS AS TRUE, THE COMPLAINT PLAUSIBLY PLEADS CLEARLY ESTABLISHED CONSTITUTIONAL VIOLATIONS ..........................................................................................33

A. Defendants Are Not Entitled to Qualified Immunity On Long's *Brady* Claim ...........................................................................................................37

   1. Long Plausibly Alleged *Brady* Theories Against Each Defendant Officer ......................................................................................................37

   2. It Was Established Long Before 2003 That Police Could Not Suppress This Evidence ...........................................................................................44

B. Weeks Is Not Entitled to Qualified Immunity On Plaintiff's Fabrication-of-Evidence Claim ........................................................................................46

   1. Plaintiff Plausibly Alleges Fabrication Theories Against Weeks .......46

   2. It Was Established Long Before 2003 That Police Could Not Fabricate Evidence ................................................................................53

C. Defendants Are Not Entitled To Qualified Immunity On Long's Claim That They Failed To Collect And Preserve Evidence ...............................56

   1. Long Plausibly Alleges Her Claim That Anderson, Newman, Verdugo, and Bloomfield Failed to Collect and Preserve Physical Evidence ..................................................................................................56

   2. It Was Established Long Before 2003 That Police Could not Refuse to Collect and Preserve Potentially Exculpatory Evidence in Bad Faith 59

D. Long's malicious prosecution claim survives the motion to dismiss because Defendants are not entitled to qualified immunity on her other claims. ....60

**CONCLUSION** ....................................................................................................61

## TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Anderson v. Marsh*, 985 F.3d 726 (9th Cir. 2021)..............................25, 32

*Arizona v. Youngblood*, 488 U.S. 51 (1988)............................................56

*Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) ...........................24

*Armstrong v. Daily,* 786 F.3d 529 (7th Cir. 2015) ............................58, 61

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................... passim

*Avery v. Milwaukee*, 847 F.3d 433= (7th Cir. 2017) ...............................51

*Banks v. Dretke*, 540 U.S. 668 (2004) ....................................................40

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ........................................25, 33

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................47

*Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002).............................. passim

*Bradford v. Scherschligt*, 803 F.3d 382 (9th Cir. 2015)....................48, 49

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................37

*Caldwell v. San Francisco*, 889 F.3d 1105 (9th Cir. 2018)....................53

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ..............................28, 38

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024)...................................36

*Carrillo v. Los Angeles*, 798 F.3d 1210 (9th Cir. 2015)................. passim

*Cohen v. Beneficial Loan Corp.*, 337 U.S. 542 (1949)...........................24

*Coinbase v. Bielski*, 143 S.Ct. 1915 (2023).............................................33

*Costanich v. Dep't of Social and Health Servs.*, 627 F.3d 1101 (9th Cir. 2010) ....55

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ...........................................................50

*Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021) ......................................6

*Cuevas v. City of Tulare*, 107 F.4th 894 (9th Cir. 2024) ........................................36

*Cunningham v. Wenatchee*, 345 F.3d 802 (9th Cir. 2003) ......................................59

*David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022) ..........................................28, 38

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ...................................50, 51, 53

*Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480 (9th Cir. 1984) ......................6

*Dupree v. Younger*, 598 U.S. 729 (2023) ...............................................................23

*E.J.T. v. Jefferson*,
    No. 21-35615, 2021 WL 5238200 (9th Cir. Oct. 12, 2021) .........................32

*Eberle v. Anaheim*, 901 F.2d 814 (9th Cir. 1990).............................................28, 38

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................................50

*Estate of Hernandez v. Los Angeles,* 21-55994 (9th Cir.) ......................................37

*Fatai v. Ramos*,
    No. 23-15354, 2024 WL 863360 (9th Cir. Feb. 29, 2024)......................25, 32

*Foster v. Indio*, 908 F.3d 1204 (9th Cir. 2018).......................................................23

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995)................................60

*Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024 (9th Cir. 2008) ..........54

*Gantt v. Los Angeles*, 717 F.3d 702 (9th Cir. 2013)...............................................52

*Gausvik v. Perez*, 345 F.3d 813 (9th Cir. 2003) ....................................................50

*Geinosky v. Chicago*, 675 F.3d 743 (7th Cir. 2012) .................................................6

*Gerstein v. Pugh*, 420 U.S. 103 (1975)....................................................................60

*Halet v. Wend Inv. Co.*, 672 F.2d 1305 (9th Cir. 1982)...........................................6

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) ..................................36

*Hernandez v. San Jose*, 897 F.3d 1125 (9th Cir. 2018)...........................................23

*In re Long*, 476 P.3d 662 (Cal. 2020) ...............................................................19, 20

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001).......................................................25

*Johnson v. Jones,* 515 U.S. 304 (1995) ..............................................................25, 32

*Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011) ..........................................................24

*Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018).............................31

*Kisela v. Hughes*, 584 U.S. 100 (2018) .............................................................35, 60

*Kyles v. Whitley,* 514 U.S. 419 (1995)............................................................ passim

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) .......................................60

*Lee v. Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ...................................................31

*Long v. Johnson*, 736 F.3d 891 (9th Cir. 2013) .......................................................19

*Long v. Weeks*, 2024 WL 1672258 (9th Cir. Apr. 18, 2024)......................................3

*Loynachan v. Smiley*,
   No. 24-1024, 2025 WL 219115 (9th Cir. Jan. 16, 2025) .......................25, 32

*Mack v. South Bay Beer*, 798 F.2d 1279 (9th Cir. 1986).........................................31

*Manuel v. Joliet*, 580 U.S. 357 (2017).....................................................................60

*Martinez v. High*, 91 F.4th 1022 (9th Cir. 2024).....................................................36

iii

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018) ................................................ passim

*Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) ...................................................59

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................................24

*Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) ......................................2

*Morris v. Ylst*, 447 F.3d 735 (9th Cir. 2006) ..........................................................42

*Mullenix v. Luna*, 577 U.S. 7 (2015) ........................................................34, 35, 36

*Napue v. Illinois*, 360 U.S. 264 (1959) ...................................................................53

*Paradis v. Arave*, 240 F.3d 1169 (9th Cir. 2001) ...................................................43

*Pauluk v. Savage*, 836 F.3d 1117 (9th Cir. 2016)...................................................23

*Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022) ...............................................25, 32

*Perez v. City of Fresno*, 98 F.4th 919 (9th Cir. 2024) ............................................36

*Polanco v. Diaz*,
No. 22-15496, 2023 WL 5008202 (9th Cir. Aug. 7, 2023). .......................31

*Pyle v. Kansas*, 317 U.S. 213 (1942) .......................................................................53

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)...................................................34

*Ruan v. United States*, 597 U.S. 450 (2022) ...........................................................55

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) ...........................61

*Silva v. Brown*, 416 F.3d 980 (9th Cir. 2005).........................................................44

*Singh v. Phoenix*, 124 F.4th 746 (9th Cir. 2024) .............................................25, 32

*Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017) ..............................................47, 48

*Spencer v. Pew*, 117 F.4th 1130 (9th Cir. 2024)...............................................34, 36

iv

*Steinle v. United States*, 17 F.4th 819 (9th Cir. 2021) ..............................................52

*Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018) ...................................................25

*Strickler v. Greene*, 527 U.S. 263 (1999) .........................................................41, 42

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)...............................................50

*Tennison v. San Francisco*, 570 F.3d 1078 (2009)......................................36, 45, 46

*U.S. v. Decinces*, 808 F.3d 785 (9th Cir. 2015) .....................................................23

*U.S. v. Manning*, 56 F.3d 1188 (9th Cir. 1995) .....................................................57

*U.S. v. Olsen*, 704 F.3d 1172 (9th Cir. 2013) ........................................................43

*United States v. Zaragoza-Moreira*, 780 F.3d 971 (9th Cir. 2015)..................56, 57

*Voskanyan v. Upchurch*,
    No. 21-55333, 2022 WL 4181664 (9th Cir. Sept. 13, 2022).......................26

*Wearry v. Cain*, 577 U.S. 385 (2016) ....................................................................38

*Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) ..................................................57

**Statutes**

28 U.S.C. § 1331 ................................................................................2

28 U.S.C. § 1367(a) ...........................................................................2

28 U.S.C. § 1291 ........................................................................ 23, 24

**Rules**

Fed. R. Civ. P. 9 ..............................................................................56

Fed. R. Evid. 201 .............................................................................31

## JURISDICTIONAL STATEMENT

Defendants-Appellants' jurisdictional statement is incorrect. OB-20-21. This Court lacks jurisdiction as explained in Argument I *infra*.

In November 2020, Plaintiff-Appellee Kimberly Long was exonerated when the California Supreme Court set aside her wrongful conviction for the murder of Oswaldo Conde. ER-58-59¶¶91-93. Prosecutors dropped charges in April 2021. *Id.*

Long filed suit on November 30, 2021, alleging the City of Corona and five of its police officers—Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, and Daniel Verdugo ("Defendant Officers")—committed investigative misconduct that caused Long's wrongful conviction. Dkt.1.[1] After the district court dismissed with leave to replead, Dkt.57, Long filed a First Amended Complaint ("FAC") on May 18, 2022, alleging additional facts. ER-39-76.

Long's FAC alleges claims under 42 U.S.C. §1983 that Defendant Officers violated Long's right to due process by suppressing, fabricating, and destroying evidence (Count I), maliciously prosecuted and illegally detained her without probable cause, in violation of the Fourth Amendment (Count II), failed to intervene (Count III), and conspired to violate her rights (Count IV). ER-59-73. Long also asserts the City's policies caused the constitutional violations, *Monell v. Department*

---

[1] Long also sued Jeffrey Glenn initially, but she has voluntarily dismissed him. Dkt.155.

*of Soc. Servs.*, 436 U.S. 658 (1978) (Count V). ER-65-70. Finally, she alleges Defendants' misconduct violated California law, asserting state-law claims for malicious prosecution (Count VI), intentional infliction of emotional distress (Count VII), conspiracy (Count VIII), *respondeat superior* (Count IX), Bane Act violations (Count X), and indemnification (Count XI). ER-70-75. The district court has jurisdiction over the federal claims under 28 U.S.C. §1331 and exercised supplemental jurisdiction over the state-law claims under 28 U.S.C. §1367(a).

On June 22, 2022, Defendants filed four motions to dismiss Long's FAC, Dkts.69-72. Defendants did not accept Long's complaint as true, and they sought dismissal by mischaracterizing and omitting allegations, contesting facts, and requesting that the district court draw inferences for them. *Id.* They filed a "request for judicial notice," asking the court to consider hundreds of pages of documents from Long's criminal case, to accept their view of facts based on those documents, and to dismiss the complaint on that basis. Dkt.73.

On December 27, 2022, the district court denied the motions, with four exceptions: it dismissed the state-law malicious prosecution, *respondeat superior*, and indemnification claims with prejudice, and it dismissed the *Monell* claim with leave to replead by January 26, 2023. Dkt.103. The district court also granted and denied in part Defendants' request for judicial notice, holding it would take notice

2

only of the fact judicial records existed, but not the truth of facts within those records. *Id.* at 7-8.

On January 4, 2023, Defendant Officers filed a notice of appeal from the December 27 order denying their motions to dismiss. Dkt. 104. Claims against the City and state-law claims were not appealed. *Id.* Shortly thereafter, on January 26, pursuant to the district court's order, Long filed her Second Amended Complaint ("SAC"), adding *Monell* allegations. Dkt. 108.

Defendant Officers' appeal was No. 23-55004. Dkt.105. They argued the district court erred in denying them qualified immunity. On April 18, 2024, this Court reversed in small part, dismissing Long's conspiracy claim on the ground it was not "clearly established that the intracorporate conspiracy doctrine is inapplicable to Section 1983 claims," and otherwise vacating the district court's order and remanding for that court "to conduct an individualized assessment of whether each [Defendant Officer] is entitled to qualified immunity for Long's remaining Section 1983 claims." *Long v. Weeks*, 2024 WL 1672258 (9th Cir. 2024).

On remand, the operative complaint was the SAC, filed pursuant to the district court's order. Dkts.103&108. On May 20, 2024, Long sought leave to file a Third Amended Complaint to include further factual allegations against Defendant Officers. Dkts.134&135.

On May 24, 2024, the district court ordered supplemental briefing, asking the parties to explaining whether "each [Defendant Officer] is entitled to qualified immunity for Long's remaining Section 1983 claims." Dkt.138. On July 11, the court held a hearing to assess each Defendant Officer's immunity claim. Dkt.154.

On July 17, consistent with this Court's remand order, the district court issued a detailed opinion, assessing each Defendant Officer's individualized claim of immunity, and holding: (1) Weeks is not entitled to immunity on Long's due process claims for suppression and fabrication of evidence, ER-17, ER-20; (2) Anderson, Newman, Verdugo, and Bloomfield are not entitled to immunity on the due process claims for suppression of evidence and for failure to collect and preserve evidence, ER-21-22, ER-25-28; (3) none of Defendant Officers is entitled to immunity on Long's Fourth Amendment malicious prosecution claim, ER-29; and (4) all are entitled immunity on Long's failure-to-intervene claim, ER-31. On each claim on which the court denied immunity to each Defendant, it found Long had plausibly alleged facts supporting that particular claim against that particular Defendant, and that the law establishing that misconduct as illegal was clearly established in 2003. ER-13-29. The district court complied strictly with this Court's remand order.

On July 17, 2024, Defendant Officers filed another notice of appeal, from the order denying them immunity, bringing the case before this Court a second time.

Dkt.159. They moved for the panel that had considered the first appeal to hear this second one, No. 24-4427, Dkt.5, but the panel declined, No. 24-4427, Dkt. 6.

Defendants contend this Court has jurisdiction to consider their challenges to Long's §1983 claims under 28 U.S.C. §1291, invoking the collateral-order doctrine. They assert without analysis that the district court's order denying their motions to dismiss is immediately appealable. OB-20-21. As explained in Argument I, *infra*, this Court lacks jurisdiction to consider the fact-based challenges Defendants raise on appeal, and it should dismiss for lack of jurisdiction.

## ISSUES PRESENTED

1.     Whether Defendants' factual challenges to Long's complaint deprive this Court of appellate jurisdiction such that the appeal should be dismissed.

2.     Whether, assuming this Court exercises jurisdiction, Long plausibly pleads clearly established constitutional claims against Defendant Officers for suppression, fabrication, and destruction of evidence, in violation of the Fourteenth Amendment due process right to a fair trial, and for malicious prosecution, in violation of the Fourth Amendment.

## STATEMENT OF THE CASE

This statement is from Long's FAC, ER-39-76, which this Court must take as true, drawing inferences for Long. *Crowe v. Oregon State Bar*, 989 F.3d 714, 724 (9th Cir. 2021).[2]

## I.     OSWALDO CONDE IS MURDERED

At some point on the night of October 5 or early morning of October 6, 2003, someone brutally murdered Oswaldo Conde. ER-46¶22. Conde was Long's

---

[2] The district court cited Long's FAC in its opinion. ER-4-32. After the first appeal in this case was filed, Long filed a SAC to comply with the district court's order. SER-57-103. Following this Court's remand, the SAC was operative, and Long filed a motion for leave to file her TAC, which adds further allegations. ER-3-56. Long cites her TAC here to elaborate on certain facts. Federal courts allow plaintiffs to respond to motions to dismiss by providing additional facts consistent with those in the complaint, *Halet v. Wend Inv.*, 672 F.2d 1305, 1309 (9th Cir. 1982); *Geinosky v. Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); and if a plaintiff could plead facts to survive a motion to dismiss, courts generally grant leave to replead, *Doleman v. Meiji Mut. Life Ins.*, 727 F.2d 1480, 1482 (9th Cir. 1984).

partner and they lived in the same home in Corona, California. ER-46¶23. At the time the murder occurred, Long was out with a friend, Jeff Dills. ER-46¶24, ER-53¶60. Long did not commit or witness the crime. ER-46¶24, ER-48¶39.

Instead, Dills brought Long home on his motorcycle in the early morning hours of October 6, and the two arrived at Long's house just minutes before 2:09 a.m. ER-54¶67; SER-11¶27. Dills's motorcycle set off a car alarm when they arrived. ER-54¶67; SER-11¶27.

When Long entered her home, she found Conde lying motionless on the living room couch with severe injuries. ER-46¶¶24. Long immediately called 911, placing the call at 2:09 a.m. ER-53¶63; SER-11¶¶27-29.

## II. DEFENDANTS RESPOND TO THE BLOODY CRIME SCENE

Defendants Weeks, Anderson, Bloomfield, Newman, and Verdugo responded minutes later. ER-46¶25; SER-12¶30. They found Long outside hysterical. ER-46¶27; SER-12¶31. Inside, Conde's body was on the couch with no pulse; he was not bleeding, his skin was ashen, and he was cold to the touch. SER-12¶32. Lividity and rigor mortis had set in. *Id.* This evidence indicated Conde died significantly before 1:20 a.m. on October 6, well before Long had arrived home. SER-12¶32.

There was blood splatter on every surface of the living room in all directions around Conde's body. ER-45¶26, ER-51¶53. It was impossible for the perpetrator to have remained blood-free. ER-51¶53. Yet there was no blood on Long's clothes at

the scene or when she submitted to police questioning that night. ER-51¶54; ER-60¶99. Defendants found no blood elsewhere in the house, and no evidence Long attempted to clean herself in sinks or showers. ER-47¶28.

## III.   LONG IS INNOCENT

Long is innocent. ER-41¶4. She voluntarily assisted the police investigation. ER-47¶¶29-33. She had no motive to kill Conde. ER-48¶39. No forensic evidence implicated her—in fact, it conclusively excluded her. ER-42¶8, ER-51¶¶52-55; ER-57¶¶82-84. Moreover, no witness or family member suggested Long as a suspect during initial interviews and a neighborhood canvass. ER-48¶38-39. Long repeatedly told Defendant Officers she was innocent. SER-14¶49.

## IV.   LEADS POINT TO ALTERNATIVE SUSPECTS

Defendant Officers investigated at least two alternative suspects. The first was Conde's ex-girlfriend, Shiana Lovejoy. ER-48¶40; ER-49¶44. They learned Lovejoy was violent and had recently threatened to kill Conde and Long. ER-47¶36.[3] The second was Long's ex-husband, Joe Bugarski. ER-48¶37. Defendant Officers determined that he, too, had a recent history of threatening Conde and Long. *Id.*[4]

---

[3] They discovered Lovejoy threatened to slash Long's and Conde's throats a week before the murder, sent Long a letter saying she was still involved with Conde, and vandalized Conde's truck. SER-13¶44. They also discovered Conde had sought a restraining order against Lovejoy, and the two had pending child custody disputes. *Id.*

[4] They learned Bugarski threatened to kill Long, threatened Conde, was involved in a confrontation at Long's house with the police, had stalked Long by

Defendants had ample reason to suspect Lovejoy or Bugarski, and no reason to suspect Long. ER-42-44¶¶40-50.

## V. THE DEFENDANT OFFICERS FRAME LONG

Nonetheless, despite these alternative suspects and strong evidence of Long's innocence, Defendant Officers fixated on Long. ER-41-43¶¶4-10, ER-48-57¶¶40-76. They suppressed, fabricated, and destroyed evidence, with the goal of exonerating the alternative suspects and pinning the crime on Long. *Id.*

### A. Defendants Suppress Their Discovery and Report of Physical Evidence That Exonerates Long

Weeks, Anderson, Verdugo, Bloomfield, and Newman suppressed highly exculpatory evidence showing Long could not have committed the crime. ER-51-52¶¶51-55. When they responded to the scene, these Defendants discovered Long's jacket—which she had been wearing when she entered the house and found Conde—blood-free on the floor next to the victim, sitting on top of a rug that was covered in blood, in the midst of a crime scene covered with blood. *Id.* Given the 360-degree blood splatter, Defendants knew it was impossible that the real killer avoided getting blood on their clothes, and their discovery of Long's jacket demonstrated that she could not have been present for the crime and arrived afterwards. ER-46¶26, ER-51¶53. These Defendants recognized the blood-free nature of the jacket as important

---

placing recording devices in her home, and knew where in Long's home a shotgun and other evidence found missing after the crime were located. SER-14¶46.

exculpatory evidence, and Anderson wrote a police report documenting this finding as significant in the case. ER-51-52¶¶51-55. However, the jacket was not collected as evidence. SER-18¶66; SER-29¶117.

Throughout Long's criminal case, Weeks, Anderson, Verdugo, Bloomfield, and Newman each suppressed that they had discovered the blood-free jacket at the scene and that they knew Long could not have been present during the murder. ER-51-52¶¶54-55. Anderson and Weeks suppressed Anderson's report documenting this discovery. *Id.*

This suppression had profound consequences in Long's criminal case. Long attempted to defend herself at trial by arguing her clothes were not bloody. *Id.* But her defense was no match for the prosecution's alternative account of her guilt, which downplayed the lack of blood on Long's clothes. *Id.*; SER-19¶71. All the while, Defendant Officers' suppressed evidence would have conclusively supported Long's account—with evidence and a report from the police themselves—that Long arrived after the crime occurred and dropped her jacket on the floor when she found Conde's body. ER-51-52¶¶54-55. If disclosed, it would have fatally undermined Defendants' theory that Long was the murderer, their entire account of how the crime occurred, and their story of how the investigation unfolded. *Id.* But without Anderson's report, Long could not show that the police, too, had discovered and

documented as important that they had found jacket, free of blood, in the middle of the blood-covered scene. *Id.*

## B. Defendants Suppress Evidence about Lovejoy and Bugarski

Defendants' efforts to frame Long did not end there. They also suppressed evidence implicating alternative suspects Shiana Lovejoy and Joe Bugarski.

### 1. Suppressed Reports Identifying Alternative Suspects and Questioning Their Credibility

Weeks and Anderson suppressed three reports identifying Lovejoy and Bugarski as alternative suspects and documenting that they had lied to police. ER-48-50¶¶41-50. Two reports by Anderson reflected Anderson's belief that Bugarski was lying to Defendants and might have been involved in the murder, ER-49¶¶42-43, and a third report by Weeks and Anderson documented that Lovejoy lied to Defendants during their investigation when she denied vandalizing Conde's truck before the murder, ER-49¶44.

At her trial, Long attempted to argue Lovejoy and Bugarski were suspects who Defendants should have investigated. ER-47¶33, ER-48¶37, ER-48-50¶¶40-50. Lovejoy and Bugarski both testified and the trial turned in part on the jury's assessment of their credibility. ER-48-50¶¶40-50. But Weeks and Anderson suppressed reports stating that Defendants considered Lovejoy and Bugarski liars and suspects. *Id.* That suppression prevented Long from proving that the police believed Lovejoy and Bugarski were alternative suspects; from impeaching Lovejoy

11

and Bugarski with their lies to police during the investigation; and from impeaching Defendants' account of the investigation, in which Long was their sole suspect. ER-48-50¶¶40-50; ER-59¶97.

### 2. Suppressed Evidence About Bugarski's Alibi

Weeks, Anderson, and Bloomfield suppressed evidence undermining Bugarski's alibi. ER-49-50¶¶46-49, ER-59¶97. Bugarski's early accounts of his whereabouts during the crime made these Defendants think he was involved and caused them to doubt his alibi. *Id.*; ER-49¶43. But they suppressed documents detailing Bugarski's initial alibi, information that Bugarski provided during an early interview with Weeks, and information Bugarski gave to Anderson during an interview, which Anderson purposefully conducted away from a recording device so Bugarski's statements would not be recorded. ER-50¶¶47-48. As a result, Bugarski had days to refine an alibi that could support a claim of innocence. ER-50¶49. The suppression impaired Long's ability to impeach Bugarski at trial. She could not establish that Bugarski was a viable alternative suspect, she could not impeach Bugarski's alibi with the inconsistent early accounts, and she could not impeach Defendants who testified she was the killer, because she lacked the evidence showing Bugarski had given police a suspicious initial alibi. ER-48¶41, ER-49-50¶¶46-49, ER-59¶¶96-97.

### 3. Suppressed Evidence About Lovejoy's Alibi

Anderson, Bloomfield, and Newman also suppressed evidence that undermined Lovejoy's alibi. ER-50¶50. These Defendants conducted interviews with Lovejoy before her recorded polygraph examination, but they suppressed the content and recordings of those interviews, including Lovejoy's alibi statements, so Long could not use them in her defense. *Id.* The contents and recordings of these Defendants' interviews of Lovejoy would have shown that they knew Lovejoy's alibi was implausible and that she had the opportunity to commit the murder. *Id.*

### C. Weeks Fabricates Witness Statements Implicating Long and Suppresses the Truth and Tactics He Used to Obtain Them

To frame Long, Weeks also knowingly fabricated witness accounts for key witnesses Jeff Dills, Oscar Castaneda, and Linda Alexander to provide. ER-52-55¶¶56-68. Weeks made those statements up himself, and they contradicted the truthful statements initially given by these witnesses. *Id.* Weeks forced these witnesses to adopt his false accounts using threats, coercion, and manipulation. *Id.* Weeks then wrote reports documenting the accounts he knew were false. *Id.*

Throughout Long's criminal proceedings, Weeks suppressed these witnesses' truthful, initial accounts; he suppressed that he fabricated statements for them; and he suppressed the tactics he used to force those witnesses to adopt his false accounts. ER-53¶59; ER-54¶65. Weeks's false accounts were the principal evidence against

Long, creating the opportunity for her to have committed the crime, undermining her alibi, and exculpating an alternative suspect. *Id.*

### 1. Fabricated Account for Long's Alibi Witness Dills

Weeks intentionally fabricated a false witness account for Long's alibi witness Dills. ER-53¶¶60-64. Dills initially gave Weeks a statement that corroborated Long's account of arriving home just before she called 911. *Id.* Weeks intentionally fabricated a contrary statement for Dills and forced him to adopt it. *Id.* According to Weeks's false account, Dills dropped Long at the crime scene at 1:20 a.m., sufficiently in advance of her 911 call at 2:09 a.m. to make it possible for Long to have committed the murder. ER-53¶63. The false account placed Dills far away from the crime scene at the time of the murder, clearing him, while also implicating Long and critically undermining her alibi. ER-53¶62. Weeks forced Dills to adopt the false account by conducting an extensive interrogation of him, in which he told Dills he was a suspect, threatened him with prosecution, and fed him facts about the investigation and information about the timing of the crime. ER-53¶¶61-62. Without this fabricated account, prosecutors in Long's criminal case could not have argued Long had time to commit the murder, dispose of the weapon, and clean up before calling 911, and Long would have had a credible alibi. ER-53-54¶64.

In addition to fabricating a false account for Dills, Weeks also suppressed Dills's initial truthful statement corroborating Long, his fabrication of a new account

14

for Dills, and the tactics he used to force Dills to adopt that account. ER-54¶65. Weeks suppressed all the details of the extensive interrogation he conducted, described above. *Id.* By suppressing this information Weeks made it impossible for prosecutors, Long, or her defense attorneys to discover that Weeks had forced Dills to adopt a fabricated account. *Id.*

## 2. Fabricated Account for Lovejoy's Alibi Witness Castaneda

Weeks also fabricated an account for Lovejoy's alibi witness, Oscar Castaneda, who provided Lovejoy an alibi for the time of the crime when she did not have another one. ER-52-53¶58. Castaneda's initial statement to Weeks did not establish an alibi for Lovejoy—he said they had been on a date that finished around 10:30 p.m. on the night of the crime. *Id.*; SER-23¶88. Weeks intentionally fabricated a different statement, which shifted Castaneda's account of the date later in time, so Castaneda dropped Lovejoy in Whittier, an hour from the scene, at 1:15 a.m., giving Lovejoy an alibi. ER-52-53¶58; SER-23-24¶¶87-91, SER-32¶123. Weeks manipulated and coerced Castaneda into adopting this false account by telling him Lovejoy was not involved in the crime, that Long was accusing Lovejoy, and that police needed Castaneda to say he was with Lovejoy when the crime occurred. *Id.*

Weeks suppressed Castaneda's initial truthful statements, his fabrication of a false account for Castaneda to provide, and the tactics he used to coerce Castaneda into adopting the false account. ER-53¶59.

### 3. Fabricated Account for Linda Alexander

Weeks also extracted a false statement from neighborhood witness Linda Alexander to corroborate the false Dills timeline he had concocted to create the opportunity for Long to commit the crime. ER-54-55¶¶66-68; SER-22-23¶¶84-86. On the night of the crime, Alexander told Weeks she heard a car alarm, a motorcycle drive off, and a female voice screaming, immediately one after the other. ER-54¶67. Her initial account supported Long's account that she had been dropped off by Dills on his motorcycle, discovered Conde, and called police immediately. *Id.* But Weeks manipulated Alexander's account to significantly lengthen the time between hearing the car alarm/motorcycle and hearing screaming. ER-55¶68. He did so to support the false theory that Long arrived home with enough time to kill Conde. ER-54-55¶¶66-68. Again, Weeks suppressed how he altered Alexander's account. *Id.*

If Weeks had not fabricated these three witness accounts, Long could have presented a solid alibi at trial, and she would have had evidence to impeach and to implicate an alternative suspect. ER-52-53¶¶57-58, ER-53¶64, ER-55¶68, ER-57¶85. Moreover, if Weeks had disclosed these witnesses' initial truthful statements, his efforts to change those accounts, and the tactics he used to force the witnesses to adopt the false accounts, Long would have been able to impeach Defendants' theory of the case and all witness testimony implicating her. ER-53¶59, ER-54¶65, ER-57¶85.

16

### D. Defendants Fail to Preserve Physical Evidence

Finally, Anderson, Newman, Verdugo, and Bloomfield failed to collect and preserve critical physical evidence. ER-55-56¶¶69-73. Anderson, Newman, and Verdugo found an unexplained champagne bottle and cup at the scene, demonstrating that other individuals had been present with Conde close in time to the crime. ER-55¶69. Forensic testing of that evidence would have revealed the identity of those individuals and given Long powerful exculpatory evidence to use at her trial. ER-55¶¶70-71. But they did not collect and preserve the evidence for testing, resulting in its eventual destruction. *Id.* Nor did they take fingerprint impressions, DNA, and other forensic evidence from doors, kitchen cabinets, and other items used by the perpetrator. ER-55-56¶72. Again, testing would have identified other individuals present and exonerated Long. ER-56¶73. Moreover, none of these Defendants preserved Long's blood-free jacket as evidence. SER-18¶66.

These Defendants failed to collect and preserve these items of evidence in bad faith. ER-55-56¶¶69-73. They could already place their chosen suspect, Long, at the scene of the crime, and they wanted to suppress evidence that would implicate others or call Long's guilt into question. ER-55¶71. Without this evidence, Long could not identify other suspects, and she could not undermine Defendants' false evidence suggesting she was the only person in the house that night. ER-56¶73.

## VI. LONG'S WRONGFUL CONVICTION

Defendants' misconduct caused Long to be wrongfully arrested, prosecuted, convicted, and imprisoned for Conde's murder. ER-56¶74, ER-57¶77, ER-57¶85, ER-59-61¶¶94-105. The State's weak case consisted of circumstantial evidence purporting to establish Long's motive—none of which suggested Long murdered Conde—and the witness statements fabricated by Weeks, which were the only evidence that created the opportunity for Long to commit the crime. SER-27-34¶¶105-125.[5] The State presented no physical evidence or murder weapon implicating Long. ER-57¶¶82-84. Because of Defendants' suppressions and destruction of evidence, discussed above, Long was deprived of evidence that would have shown she was innocent, impeached key witnesses against her (including Defendants), implicated alternative suspects, and provided her a strong defense against Defendants' false allegations. ER-57¶85; SER-29-34¶¶116-125.

At Long's first trial, nine of 12 jurors voted "not guilty" and the jury hung. ER-57¶78. Long was wrongly convicted at her second trial. ER-57¶¶77-79. She was sentenced to 15 years to life. ER-57¶81.

---

[5] The State's theory was that Long arrived home less than an hour before her 911 call, bludgeoned Conde to death, disposed of bloody clothes and the murder weapon, and cleaned herself and the scene, before calling the police. ER-52-53¶55; ER-53¶64; ER-55¶68. That theory depended wholly on Dills's and Alexander's accounts fabricated by Weeks, which put Long at the scene before she had actually arrived.

## VII.  LONG FIGHTS FOR HER FREEDOM AND IS EXONERATED

Long was a young mother of two young children. ER-58¶¶86-90. Her formative adult years were consumed with the horror of wrongful imprisonment. *Id.* She missed out on the lives of her family and friends, and she was not present to raise her kids. *Id.* Her career as a nurse came to a halt. *Id.* Long was branded a murderer for a crime she had nothing to do with. *Id.*

Behind bars, Long maintained her innocence and fought to clear her name. ER-58¶91. Courts reviewing her case acknowledged Long's innocence and feared she had been wrongly convicted. Following her second trial, the judge said, "To make a perfectly clear record in this matter, if this was a court trial, … I would have found the defendant not guilty." *In re Long*, 476 P.3d 662, 667 (Cal. 2020); ER-57¶80. Reviewing Long's §2254 petition, this Court said, "Were we sitting as the reviewing court on direct appeal, we might have found the evidence to be insufficient," *Long v. Johnson*, 736 F.3d 891, 897 (9th Cir. 2013), and Judge Watford added he had "grave doubts about whether the State has convicted the right person in this case," *id.* (Watford, J., concurring). The state habeas trial court found "it highly unlikely that the petitioner committed the crime[.]" ER-138.

Finally, in November 2020, the California Supreme Court overturned Long's conviction, ER-59¶92, holding the evidence against her was weak and that her defense attorney was ineffective in his failure to present a time-of-death expert, who

would have testified Conde died significantly before Long arrived home, *In re Long*, 476 P.3d at 674-76. Prosecutors dismissed charges in April 2021. ER-59¶93. In September 2022, Long was granted relief under California's law for wrongfully convicted individuals. SER-35¶140.

## SUMMARY OF THE ARGUMENT

Kimberly Long is an innocent woman who was wrongly convicted of a murder she did not commit. She sues to hold accountable the officers who caused her wrongful conviction. In her complaint, Long pleads in detail deeply established constitutional claims that Defendants framed her and violated her rights by suppressing, fabricating, and destroying evidence. The district court found that Long adequately alleged her claims and denied qualified immunity in a detailed opinion that carefully assessed the liability of each Defendant Officer individually, based on voluminous briefing and a hearing.

This Court should not reach the merits because it lacks jurisdiction in this qualified-immunity appeal. Defendants do not treat Long's allegations as true, draw inferences in her favor, or argue that her version of events fails to state clearly established constitutional violations. Instead, they ignore and discredit Long's central allegations, challenge her facts, ask for inferences in their own favor, and improperly point to materials from outside the pleadings to challenge Long's allegations. In so doing, Defendants abuse the purpose of the collateral-order doctrine, which is designed to resolve purely legal issues of immunity. This Court should dismiss because Defendants' factual challenges deprive this Court of appellate jurisdiction.

If this Court looks past the jurisdictional issues, it should affirm. The Defendants suppressed *Brady* evidence, fabricated evidence inculpating Long, and acted in bad faith when they failed to collect and preserve other potentially exculpatory evidence. Long alleges each of these constitutional violations in detail, going above and beyond what is required by the Federal Rules of Civil Procedure. Additionally, it was clearly established long before 2003 that each Defendants' particular misconduct violated the Constitution. Qualified immunity is not appropriate in this case, especially at this stage where Long's pleadings must be taken as true and all inferences drawn in her favor.

Long is the victim of an extreme injustice at Defendants' hands. The delay inflicted by this second interlocutory appeal at the pleading stage, which has delayed this case more than three years, compounds that injustice. This Court should dismiss for lack of jurisdiction. In the alternative, it should affirm.

## ARGUMENT

### I.   THIS COURT SHOULD DISMISS DEFENDANTS' FACT-BASED APPEAL FOR LACK OF JURSIDICTION

This Court must consider jurisdiction and does so *de novo*. *U.S. v. Decinces*, 808 F.3d 785, 788 (9th Cir. 2015). Defendants assert without analysis that this Court has jurisdiction under 28 U.S.C. §1291, saying denials of immunity are immediately appealable under the collateral-order doctrine. OB-20. But that avenue for interlocutory appeals is narrow, and Defendants' arguments fall outside it.

As the Supreme Court reminded recently, orders denying immunity are only "sometimes immediately appealable." *Dupree v. Younger*, 598 U.S. 729, 734 n.3 (2023). In this context, appellate jurisdiction is "circumscribed," *Foster v. Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018), and this Court's review is proper only if the defendant "raises the 'purely legal' question of whether the facts alleged by the plaintiff demonstrate a violation of clearly established law," *Hernandez v. San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018).

Defendants fail to satisfy this jurisdictional requirement. They have chosen to make arguments on appeal that contest the facts Long has pleaded. As a result, this Court lacks jurisdiction, and it should dismiss.

### A.   Appellate Jurisdiction In Immunity Appeals Is Limited

This Court's jurisdiction is limited, and it should enforce the limitation. Congress limits appellate jurisdiction to appeals from final judgments. 28 U.S.C.

23

§1291. The final-judgment rule is "borne out of recognition that piecemeal litigation increases trial costs, causes delays in the litigation, and risks the creation of unnecessary appellate work by presenting issues for review which could have been avoided entirely if trial had proceeded." *Armendariz v. Penman*, 75 F.3d 1311, 1316 (9th Cir. 1996) (*en banc*).

The collateral-order doctrine is a narrow exception to the final-judgment rule, permitting immediate appeal of interlocutory orders that conclusively determine a disputed question, entirely separate from the merits, that is effectively unreviewable on appeal from final judgment. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 542, 546 (1949). This exception was extended to pretrial orders denying officials qualified immunity in *Mitchell v. Forsyth*, 472 U.S. 511, 525-30 (1985).

However, this Court has recognized repeatedly, "We must be cautious not to expand the *Mitchell* exception beyond its intended scope," *Armendariz*, 75 F.3d at 1316. "[T]he *Cohen* framework breaks down if there is no separation between the merits of the underlying lawsuit and the subject matter of the collateral order being appealed." *Jones v. Clark*, 630 F.3d 677, 679 (7th Cir. 2011). "The problem, as the Court has recognized, is that a great number of orders denying qualified immunity at the pretrial stage are linked closely to the merits of the plaintiff's claim." *Id.*

To manage that problem, *Johnson v. Jones* drew a strict line: jurisdiction over qualified-immunity appeals is limited to "abstract issues of law." 515 U.S. 304, 317

(1995). That "abstract issue" is usually "whether the federal right allegedly infringed was clearly established." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). Any other argument is outside of this Court's jurisdiction, including requests that this Court (1) resolve factual disputes, (2) adopt a new version of the facts, (3) weigh the evidence, or (4) draw different inferences from evidence. *See Johnson*, 515 U.S. at 316.

This jurisdictional limit applies with full force when purportedly legal arguments stray into factual territory. A "'fact-related' legal inquiry" is beyond appellate jurisdiction, *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009), and there is no jurisdiction when a legal argument is actually a "poorly disguised" factual attack, *Peck v. Montoya*, 51 F.4th 877, 886 (9th Cir. 2022); *Strand v. Minchuk*, 910 F.3d 909, 914 (7th Cir. 2018).

### B. Immunity Appeals That Contest Facts Should Be Dismissed

To secure jurisdiction, defendant officers appealing a denial of immunity must adopt the plaintiff's facts and present purely legal issues based on those facts. *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001). When appealing defendants fail to do so and instead challenge facts, either expressly or with arguments dependent on disputed facts, this Court dismisses for lack of jurisdiction. *Anderson v. Marsh*, 985 F.3d 726, 732-33 (9th Cir. 2021); *Singh v. Phoenix*, 124 F.4th 746, 756 (9th Cir. 2024); *Loynachan v. Smiley*, 2025 WL 219115, at *2 (9th Cir. Jan. 16, 2025); *Fatai v. Ramos*, 2024 WL 863360, at *1-2 (9th Cir. Feb. 29, 2024);

*Reed v. Hammond,* 2023 WL 4542017, at *1 (9th Cir. July 14, 2023); *Voskanyan v. Upchurch*, 2022 WL 4181664, at *2 (9th Cir. Sept. 13, 2022).

### C. Appellants Present Factual Challenges, Not Legal Issues

Applying these jurisdictional standards to Defendants' opening brief, it is apparent that Defendants' decision to present factual arguments, instead of purely legal ones based on Long's facts, deprives this Court of jurisdiction. Nowhere in their brief do Defendants even acknowledge—let alone attempt to satisfy—the jurisdictional requirements. Instead, Defendants ignore allegations in Long's complaint, contest and mischaracterize Long's facts, rely on their own version of events, draw inferences for themselves, and challenge Long's allegations with disputed and improper references to materials outside the pleadings. As a result, this Court lacks jurisdiction.

**1. Defendants Ignore Allegations in the Complaint.** The two-page summary of Long's complaint in Defendants' Statement of the Case is a high-level outline of Long's theories, but it does not discuss allegations whatsoever. OB-23-24. Defendants assert in a footnote that they will address Long's factual allegations, OB-24 n.2, but their sparse references fail to confront many of Long's allegations.

Most prominently, Defendants do not discuss Long's *Brady* theory that *all* the Defendant Officers suppressed the fact that they observed Long's jacket blood-free on a bloody rug when they visited the crime scene and considered it to be critical

evidence. Statement V(A) *supra*. Moreover, Weeks and Anderson suppressed the report Anderson wrote documenting the importance of that evidence. *Id.* If this evidence had been disclosed, Long would have had powerful exculpatory evidence corroborating her account that she was not present at the scene when the crime was committed. *Id.* She could have undermined the State's prosecution theory at trial that the absence of blood on Long was irrelevant and impeached the testimony of Anderson and others about the blood evidence at the scene. *Id.*

Defendants never discuss this central theory in their brief. Instead, they say explicitly that refuse to discuss it because they consider the allegations to be "untrue." OB-24 n.2. To support that assertion, the Defendants cite a 2022 decision by the district court. But that decision analyzed Long's initial complaint, which is no longer the operative complaint and was not involved in the district court order that is currently being appealed. Compare Dkt. 57 with ER-4-32. To the contrary, when the district court assumed the truth of Long's allegations in her FAC when deciding the order being appealed, it found that Long stated a plausible suppression claim involving the blood-free jacket. ER-15, ER-21-22. It is hard to imagine a more express disregard of the facts in Long's Complaint than Defendants' refusal to accept the truth of Long's allegations after the district court expressly did so.

Defendants' decision to ignore Long's allegations extends to other theories as well. Nowhere in their brief do they discuss the theory that Weeks suppressed the

initial truthful statements from Dills and Alexander (corroborating Long) and from Castaneda (undermining Lovejoy's alibi), suppressed that Weeks fabricated different accounts for these witnesses, or that Weeks suppressed the tactics he used to ensure they adopted those false accounts. Compare Statement V(B) *supra*, with OB-88-96. Moreover, Defendants do not discuss Long's allegation that Weeks and Anderson suppressed police reports documenting Alexander's belief that Bugarski was lying to the police, and that they considered Bugarski a suspect. Compare Statement V(A) *supra*, with OB-88-96.

Defendants' decision to ignore these central theories means they have forfeited any argument for dismissal of these claims, *California v. Azar*, 911 F.3d 558, 573 n.1 (9th Cir. 2018), and it will be too late to raise new arguments in reply, *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).[6] Regardless, Defendants' decision to ignore much of Long's complaint deprives this Court of jurisdiction.

---

[6] Defendants' forfeiture of these points also means that this Court could summarily affirm, if it does not dismiss the appeal for lack of jurisdiction. If Long's complaint "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then [Long is] entitled to go forward with their claims," *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022). Long's Complaint contains such allegations against each of the Defendant Officers that they do not challenge, and so there is no reason to discuss the limited qualified-immunity arguments Defendants have preserved.

**2. Defendants Contest Allegations in the Complaint.** In addition, Defendants' arguments contesting and mischaracterizing Long's allegations also deprive this Court of jurisdiction. There are many examples:

- Defendants paint Long as guilty, calling her challenges to her conviction "unsuccessful," saying she "has never been exonerated," and asserting that her innocence claims were rejected, all while ignoring Long's allegations that she is innocent, and was exonerated by the California Supreme Court after numerous judges expressed concern she had been wrongly convicted. Compare OB-16-17, OB-29, with Statement VII *supra*.

- Defendants contend Long has not alleged Defendants knew Long was innocent, when the complaint alleges throughout that that "they knew Plaintiff was innocent," ER-61¶107, and knew "Long could not have been present at the time of the murder," ER-45 ¶54. Compare OB-64, with Statement V(A), V(C)(1), V(C)(3) *supra*.

- Defendants say the evidence they suppressed—including reports that Lovejoy and Bugarski lied to the police and were considered suspects—was not *Brady* evidence, when Long alleges in detail the exculpatory and impeachment value of each item of suppressed evidence. Compare OB-91-96, with Statement V(B), V(C)(2)-(3) *supra*.

- Defendants re-cast Weeks's knowing fabrication of the Dills, Castaneda, and Alexander witness accounts as mere manipulation, which they argue is permissible, disregarding Long's allegations that Weeks suppressed these witnesses' truthful initial accounts and then forced them to adopt new accounts he fabricated. Compare OB-67-68, with Statement (V)(C) *supra*.

- Defendants assert that evidence Anderson, Newman, Verdugo, and Bloomfield destroyed would not have exonerated Long, that they acted negligently and not in bad faith, that they had no motive to avoid developing evidence that might exonerate Long, and that Long could have collected and tested physical evidence herself, when the complaint alleges the opposite on each point. Compare OB-79-85, with Statement V(D) *supra*.

This list of disputed facts demonstrates that this appeal is far from the type of interlocutory appeal that presents purely legal issues over which this Court might have jurisdiction.

**3. Defendants Improperly Cite Outside Materials to Contradict the Complaint.** Jurisdiction is also lacking because Defendants point to evidentiary materials outside the pleadings to challenge Long's allegations. They improperly include more than 100 pages of selectively excerpted transcripts from Long's criminal proceedings in their excerpts of the record, ER-77–270, and ask the Court to use these materials to resolve factual disputes in their favor:

- Defendants cite transcripts and judicial opinions to contest allegations that Weeks and Anderson suppressed police reports documenting Anderson's belief that Bugarski was lying and was a suspect, and Anderson's and Weeks's report documenting that Lovejoy lied to them about vandalizing the victim's truck shortly before the crime. Compare OB-92-94, with Statement V(B)(1), (3) *supra*.

- Defendants cite a trial transcript to contradict allegations that Weeks coerced Dills to adopt Weeks's fabricated account, which moved the time Dills had arrived at Long's home with her on the night of the crime earlier, creating the opportunity for her to commit the crime. Compare OB-71-72, with Statement V(C)(1) *supra*.

- Defendants cite transcripts to support their own view of what occurred during the cross-examination of various witnesses during Long's criminal proceedings. Compare OB-68-69, OB-71-72, OB-92-94, with Statement V(B)(1) *supra*.

Defendants are wrong about what these outside materials show. But this Court should not even consider these arguments, because using outside materials to dispute

30

Long's complaint is improper.[7] Regardless, for purposes of evaluating jurisdiction, Defendants' decision to use outside materials to dispute Long's allegations injects still more factual disputes into this appeal, and it is another reason this Court lacks jurisdiction.

### D. This Court Should Dismiss for Lack of Jurisdiction

Defendants' decision to ignore the allegations in the Complaint, to contest the facts alleged, to mischaracterize Long's allegations, and to make arguments about the truth of the Complaint based on outside materials infects every argument that they make about immunity. As a result, this appeal does not fall within the collateral-

---

[7] Defendants assert in a footnote that the district court took judicial notice of these materials, and that this Court should as well. OB-28 n.4. But the district court gave no indication it was taking judicial notice of any outside materials. *See* ER-4-32. Even if the district court's prior order on judicial notice carried over to this appeal, the court there took judicial notice only to "consider the existence of the judicial records, not the truth of the facts asserted therein." Dkt.103 at 8. Defendants' attempts to dispute the truth of Long's factual assertions belies the limited purpose for which the district court took judicial notice.

Courts "may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018). Federal Rule of Evidence 201 establishes an exception for courts to take notice of "matters of public record," *Mack v. South Bay Beer*, 798 F.2d 1279, 1282 (9th Cir. 1986), but that exception must not swallow the rule, and so judicial notice of public records is allowed only if a fact "is not subject to reasonable dispute," FED. R. EVID. 201(b); *Lee v. Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). While a court may take notice of the fact that a judicial proceeding occurred, it may not take notice of disputed facts in the records of that proceeding. *Id.*; see also *Khoja*, 899 F.3d at 999 ("[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.").

order doctrine. Instead of raising legal issues separate from the merits, Defendants ask the Court to decide the merits—to rule that Defendants are entitled to immunity based on Defendants' own view of the facts—at the start of the case. This is precisely what the final-judgment rule prohibits. *Johnson*, 515 U.S. at 314-15.

This Court holds that dismissal is appropriate when an opening brief "does not challenge whether the facts alleged in the complaint support a claim of violation of clearly established law," but instead "seeks a determination that facts not alleged in the complaint support a finding of qualified immunity." *E.J.T. v. Jefferson*, No. 21-35615, 2021 WL 5238200, at *1 (9th Cir. Oct. 12, 2021). This appeal is thus a "poorly disguised" effort to impermissibly contest the facts. *Peck*, 51 F.4th at 886. Because there is no purely legal immunity issue to resolve, this Court should dismiss for lack of jurisdiction. *Singh*, 124 F.4th at 756; *Loynachan*, 2025 WL 219115, at *2; *Fatai*, 2024 WL 863360, at *1; *Anderson*, 985 F.3d at 732-33.

It is worth emphasizing that this second, successive, interlocutory appeal at the motion-to-dismiss stage represents an abuse of the collateral-order doctrine. Long filed this civil case more than three years ago, and since then it has been stalled. This second appeal has further delayed a righteous civil rights case, in which all parties well know the facts are hotly contested. Judicial resources are wasted and costs increased, all in an exercise more efficiently resolved through discovery and trial. The Supreme Court in *Behrens* expressed concerns about successive immunity

appeals just like this one, suggesting courts should certify such appeals as frivolous and resolve factual disputes at trial in the district court instead. 516 U.S. at 310; see also *Coinbase v. Bielski*, 143 S.Ct. 1915, 1922 (2023). These considerations further support enforcing jurisdictional limits and dismissing for lack of jurisdiction.

## II. ACCEPTING LONG'S ALLEGATIONS AS TRUE, THE COMPLAINT PLAUSIBLY PLEADS CLEARLY ESTABLISHED CONSTITUTIONAL VIOLATIONS

If this Court chooses to look past the jurisdictional defects and forfeitures to address Defendants' arguments, it should affirm. Consistent with this Court's instruction on remand, the district court carefully analyzed whether each Defendant Officer was entitled to qualified immunity for each of Long's claims, and it correctly determined: that none of Defendant Officers is entitled to immunity for Long's *Brady* claim that they suppressed material, exculpatory and impeachment evidence; that Weeks is not entitled to immunity for knowingly fabricating evidence used in Long's criminal case; that Anderson, Newman, Verdugo, and Bloomfield are not entitled to immunity for failure to collect and preserve evidence; and that none of Defendants is entitled to immunity for Long's federal malicious prosecution claims.

As the district court recognized, qualified immunity should not be granted if the allegations in a complaint, taken as true, satisfy a two-part test: (1) the allegations show that Defendants violated Long's constitutional rights, and (2) the constitutional rights were clearly established at the time of the Defendants' misconduct. *Spencer*

*v. Pew*, 117 F.4th 1130, 1137 (9th Cir. 2024). Defendants argue Long's allegations fail both parts of this test.

As explained in each subsection below, Long plausibly alleges in great detail how each Defendant Officer violated her due process rights by committing *Brady* violations, fabricating evidence, failing to collect and preserve potentially exculpatory evidence, and maliciously prosecuting her. Her allegations thus satisfy the first part of the qualified immunity analysis, and certainly at this stage, where her allegations must be taken as true and all reasonable inferences are drawn for her. *Ashcroft*, 556 U.S. at 678.

As to the second part, a right is "clearly established" when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Notice is the touchstone of this analysis. Often, this notice is provided by case law recognizing that certain misconduct is unconstitutional. But there does not need to be "a case directly on point for a right to be clearly established." *Id.* The dispositive question is whether an officer would know that his particular conduct violates the Constitution. *Mullenix*, 577 U.S. at 12.

As Defendants point out, some constitutional principles are cast at a high level of generality. For example, the contours of the Fourth Amendment's test for excessive force are not clearly defined. *Kisela v. Hughes*, 584 U.S. 100, 104-05

(2018). This lack of precision in the Fourth Amendment context means "it is sometimes difficult for an officer to determine" whether force will later be found unconstitutional. *Id.* at 104. Similarly, the Eighth Amendment's "cruel and unusual punishments" clause fails to give officials precise guidance, and therefore rights under the Eighth Amendment tend to require more on-point case law to be "clearly established."

However, other constitutional standards are much more precisely defined. For instance, this Court has recognized that "the contours of a defendant's right to *Brady* material are focused and clear" because police and prosecutors have notice of what must be disclosed: any evidence that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Carrillo v. Los Angeles*, 798 F.3d 1210, 1224 (9th Cir. 2015). This Court has even contrasted the qualified immunity analysis performed where rights are precisely defined, as in the *Brady* context, with the different analysis that must be conducted when the rights are generally defined, as in the Fourth Amendment context above. *Id.* . Where a constitutional principle is defined precisely, so that officers are on notice of what conduct is prohibited, courts do not require a prior case with the same facts. Doing so would contravene the immunity standard. *Mullenix*, 577 U.S. at 12 (prior case is not required if existing precedent placed the legal question "beyond debate").

Ignoring the distinction, Defendants impose a qualified immunity standard that would require Long to point to an identical previous case. Putting to one side that Long *can* point to nearly identical cases, it is important to note that Defendants are misstating the immunity standard for this type of case. In support of their argument, Defendants cite recent Ninth Circuit cases that involve more generally stated constitutional principles. *E.g.*, *Cuevas v. City of Tulare*, 107 F.4th 894 (9th Cir. 2024) (Fourth Amendment excessive force); *Perez v. City of Fresno*, 98 F.4th 919 (9th Cir. 2024) (same); *Spencer*, 117 F.4th 1130) (same); *Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) (same); *Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024) (Eighth Amendment deliberate indifference); *Martinez v. High*, 91 F.4th 1022 (9th Cir. 2024) (Fourteenth Amendment deliberate indifference). But those are the type of case in which the Supreme Court has said courts must take special care to find analogous precedent. *Mullenix*, 577 U.S. at 12.

The constitutional principles at issue here—suppression of material, exculpatory and impeachment of evidence, fabrication of false evidence, destruction of evidence, and malicious prosecution—are defined with much greater precision. In this context, this Court holds that the right at issue must not be defined too narrowly, and that a prior case with the same facts is not necessary to defeat immunity. *Carrillo*, 798 F.3d at 1224; *Tennison v. San Francisco*, 570 F.3d 1078, 1093 (2009). This Court should resist Defendants' invitation to define the immunity

analysis too narrowly, which would effectively require a case directly on point, in contravention of Supreme Court precedent.[8]

### A. Defendants Are Not Entitled to Qualified Immunity On Long's *Brady* Claim

#### 1. Long Plausibly Alleged *Brady* Theories Against Each Defendant Officer

Long alleges Defendant Officers suppressed exculpatory and impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Long alleges that: (1) Weeks, Anderson, Bloomfield, Newman, and Verdugo suppressed that they found Long's jacket blood-free amidst a bloody crime scene, Statement V(A) *supra*; (2) Anderson and Weeks suppressed a police report in which they documented that they found the blood-free jacket important to their investigation, *id.*; (3) Anderson and Weeks suppressed three police reports identifying Lovejoy and Bugarski as alternative suspects, and also documenting that Lovejoy and Bugarski had both lied to police during the investigation, Statement V(B)(1) *supra*; (4) Weeks suppressed the initial truthful statements he obtained from Dills and Alexander (corroborating Long's account) and Castaneda (undermining Lovejoy's alibi), as well as the tactics he used to force these witnesses to adopt false accounts he concocted (discussed below); (5) Anderson, Bloomfield, and Weeks suppressed

---

[8] This Court recently vacated its panel decision and is currently considering *en banc* the question of particularity in the qualified immunity analysis in *Estate of Hernandez v. Los Angeles,* 21-55994 (9th Cir.).

information about the initial, flimsy alibi that Bugarski told police, Statement V(B)(2) *supra*; and (6) Anderson, Bloomfield, and Newman suppressed interviews with Lovejoy that undermined her alibi, Statement V(D) *supra*.

As discussed, Defendants have waived or forfeited any challenge to Long's theories (1), (2), the part of (3) pertaining to Bugarski, and (4), because they have failed to discuss those theories. Argument I(C)(1) *supra*; *Azar*, 911 F.3d at 573 n.1; *Eberle*, 901 F.2d at 818. This Court should affirm for that reason alone—only "one allegation of a harmful act that would constitute a violation of a clearly established right" is required for Long's claims to proceed. *David*, 38 F.4th at 799.

The elements of a *Brady* claim are: (1) an officer suppressed evidence that was favorable to the accused, (2) the evidence was material to the criminal case, and (3) the officer acted intentionally or with deliberate indifference to or reckless disregard for an accused's rights. *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018). Favorable evidence includes exculpatory evidence and evidence that would impeach a state's witness or the police investigation. *Kyles v. Whitley,* 514 U.S. 419, 445 (1995). Evidence is material "when there is any reasonable likelihood it could have affected the judgment of the jury," *Wearry v. Cain*, 577 U.S. 385, 392 (2016), and materiality must be determined considering suppressed evidence collectively, *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002). So Defendants' attempts to

nitpick the materiality of individual pieces of suppressed evidence misconstrues the legal test.

Considered individually and certainly collectively, the materiality of the suppressed evidence outlined above is clear. Start with the suppressed police reports showing police found Long's blood-free jacket sitting on a blood-soaked rug amidst a room speckled with blood on every wall. Statement V(A) *supra.* This evidence held profound exculpatory and impeachment value. At her trial, Long attempted to argue that her blood-free clothes proved she did not commit the murder, but the prosecution downplayed this argument and contended she must have cleaned herself. Anderson testified about the blood evidence found at the scene, omitting Long's blood-free jacket. If Defendants had revealed they had found Long's jacket blood free or had disclosed the report documenting that they found that physical evidence important, Long could have corroborated her account that she was not present at the time of crime with evidence directly from the investigating officers, and she could have used it to impeach the credibility of officers and prosecutors who downplayed the lack of blood on her clothes. *Kyles*, 514 U.S. at 445 (evidence bearing of key physical evidence must be disclosed); *Carrillo*, 798 F.3d at 1226-27 (evidence impeaching the government and implicating another person); *Benn*, 283 F.3d at 1060 (analysis of physical evidence).

The suppressed police reports showing Weeks and Anderson found Bugarski and Lovejoy not credible and considered them suspects were also material. So, too, for the suppressed evidence that undermined their alibis. Bugarski and Lovejoy were alternative suspects who also served as key state's witnesses. By testifying as credible witnesses, the prosecution was able to eliminate them as alternative suspects and implicate Long. However, if these reports had been turned over, Long could have impeached the credibility of Bugarski and Lovejoy, shown that police shared her theory that they were alternative suspects, and demonstrated that Defendants' investigation purported focus solely on her was not the truth. *Kyles*, 514 U.S. at 445 (suppressed evidence of an alternative suspect material); *Mellen*, 900 F.3d at 1096 (evidence that a key witness is a liar is material); *Carrillo*, 798 F.3d at 1226 (evidence "potentially inculpating another person" material); *Benn*, 283 F.3d at 1054-56 (evidence showing witness lied to police material).

Finally, Weeks's suppression of Dills's, Castaneda's, and Alexander's initial accounts, which corroborated Long's story and undermined Lovejoy's alibi, are material exculpatory and impeachment evidence as a matter of law. As is Weeks's suppression of the tactics he used to obtain those false statements. The Supreme Court in *Kyles*, 514 U.S. at 442-46, and in *Banks v. Dretke*, 540 U.S. 668, 694 (2004), held that disclosure is required where evidence shows that an official coached a

40

witness, that a witness gave prior inconsistent statements, or that a witness put forward as honest is actually dishonest.

Defendants cannot argue that this evidence was cumulative and therefore not material. "The government cannot satisfy its *Brady* obligation to disclose exculpatory evidence by making some evidence available and claiming the rest would be cumulative. Rather, the government is obligated to disclose all material information casting a shadow on a government witness's credibility." *Mellen,* 900 F.3d at 1097-98. The impeachment evidence that was suppressed would have allowed Long to attack the credibility of witnesses. For example, Dills's account creating an opportunity for Long to commit the crime could have been conclusively undermined; Bugarski would have been less credible if his lies had been exposed and his suspected involvement revealed; Lovejoy's alibi, supported by Castaneda, would have evaporated, and her opportunity to commit the crime made apparent; and Defendants' testimony about their belief and investigation of Long's guilt would called into question.

There is far more than a "reasonable probability" that Long would not have been convicted if this suppressed evidence had been turned over. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). The case against her was flimsy, and it depended solely circumstantial evidence of motive and the opportunity she had to commit the crime created by the accounts of Dills and Alexander. Long's first trial ended in a mistrial

and most of the jurors believed she was innocent. Statement VI *supra*. The suppression of this evidence, which could have been used to exculpate Long, implicate the other alternative suspects, and impeach virtually every witness who testified, including Defendants, certainly "undermines the confidence in the outcome of the trial" and violates *Brady*. *Kyles*, 514 U.S. at 434.

For the limited set of Long's theories that Defendants address, Defendants lodge arguments against particular pieces of suppressed evidence. As noted above, this argument misses the mark. Evidence should be analyzed collectively for *Brady* purposes. *Benn*, 283 F.3d at 1053. But even considering these arguments separately, they do not stand up.

Defendants argue Weeks and Anderson's reports discussing the credibility of Bugarski and Lovejoy were not *Brady* material because, in Defendants' words, "*Brady* does not require disclosing beliefs or opinions about witness credibility." OB-91. Defendants cite *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006), but *Morris* speaks only to whether *Brady* compels prosecutors to turn over "opinion work product." *Id.* at 742. It does not address notes taken by police during investigations. To the contrary, *Strickler* holds that police notes from witness interviews that have exculpatory and impeachment value must be disclosed. 527 U.S. at 285. Long could have used Defendant Officers' reports as impeachment evidence as discussed above.

Defendants also argue this evidence was not *Brady* material that needed to be disclosed because it would be inadmissible. OB-91. That is a factual dispute that ignores the complaint. But Ninth Circuit law also refutes this assertion. Impeachment evidence "need not have been independently admissible" in the criminal trial to be *Brady* evidence. *U.S. v. Olsen*, 704 F.3d 1172, 1183-84 (9th Cir. 2013); *Paradis v. Arave*, 240 F.3d 1169, 1179 (9th Cir. 2001).[9]

Finally, Defendants suggest that this evidence need not have been disclosed because certain witnesses were cross-examined at trial. *E.g.*, OB-71-72 (asserting Dills was cross-examined about the night of the crime, citing ER-78-131); OB-92-94 (asserting Lovejoy was impeached, citing ER-174-184, 225-246); OB-69 (asserting Castenda was cross-examined about Lovejoy's alibi, citing ER-254-270); OB-94 (asserting Bugarski was cross-examined about his alibi, which was corroborated by other witnesses, citing ER-194-224); OB-68-69 (asserting neighborhood witnesses were cross-examined about their observations on the night

---

[9] Defendants also cite transcripts and judicial opinions to contest the allegation that Weeks and Anderson suppressed their police reports documenting that Lovejoy lied to them about vandalizing the victim's truck shortly before the crime. See OB-92. As discussed, this is an improper use of materials outside of the pleadings to contest the allegations. Argument I(B) *supra*. Moreover, the assertion that they in fact disclosed this evidence is contrary to their arguments that it did not need to be disclosed in the first place. Regardless, the criminal trial transcripts cited establish only that Lovejoy admitted at trial that she had vandalized the truck. ER-225-226, 232-233. They do not even hint at the fact that Weeks and Anderson had written a report documenting that they knew Lovejoy had lied to them about the truck at the start of their investigation. *Id.*

of the crime, citing ER-167-175). Again, these arguments improperly rely on outside materials to contest the complaint. Argument I(B) *supra*. But for *Brady* purposes it does not matter that defense attorneys had the opportunity to cross-examine witnesses at trial—of course they did. Instead, what matters is that those attorneys did not know they lacked the evidence necessary to impeach these witnesses during cross-examination. Indeed, all of these citations to transcripts merely show that the evidence Defendants suppressed was vital to Long's defense. *Silva v. Brown*, 416 F.3d 980, 989 (9th Cir. 2005) ("suppressed impeachment material may take on an even greater importance" where impeachment failed at trial because the failure "demonstrates only the inadequacy of the impeachment material *actually presented*"). This Court should reject Defendants' arguments.

### 2. It Was Established Long Before 2003 That Police Could Not Suppress This Evidence

It was clearly established long before 2003 that police officers had to disclose exculpatory and impeachment evidence. *Carrillo*, 798 F.3d at 1219 ("The law in 1984 clearly established that police officers were bound to disclose material, exculpatory evidence."); *Mellen*, 900 F.3d 1085, 1103-04 (9th Cir. 2018) (holding it was clearly established in 1997 "that police officers had a duty to disclose material impeachment evidence to prosecutors"). To determine whether it was "clearly established" that evidence in a particular case had to be turned over, the Court asks whether a reasonable officer would have recognized that the withheld evidence was

exculpatory or impeaching and needed to be turned over. *Tennison*, 570 F.3d at 1093.

Defendants argue that, instead of asking whether a reasonable officer would have recognized a particular piece of evidence as exculpatory or impeaching, a piece of evidence can be "clearly established" as *Brady* material only if a prior case explicitly recognized it as such. But that's not how *Brady* works. Whether a specific piece of evidence needs to be turned over does not depend on the form of that piece of evidence—it does not matter whether the evidence is a police report, forensic analysis, or something else. It was clearly established in 2003 that all evidence, regardless of its form, had to be turned over if it was "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Carrillo*, 798 F.3d at 1224. Otherwise, if the form of a piece of evidence dictated whether it was "clearly established" as *Brady* material, police officers could escape liability by inventing new methods of documenting evidence and then withholding it.

That being said, case law in the Supreme Court and Ninth Circuit put it beyond doubt in 2003 that officers had to turn over the specific pieces of evidence that Defendant Officers suppressed. This is true for the jacket evidence;[10] for the

---

[10] *Kyles* established by 1995 that police must disclose information bearing on critical physical evidence. 514 U.S. at 452-53. *Benn* established in 2002 police must disclose physical evidence analysis. 283 F.3d at 1060. *Carrillo* holds that by 1984 it was established that documents showing a divergent account—here the initial account of the police about physical evidence—must be disclosed. 798 F.3d at 1225.

evidence documenting that Lovejoy and Bugarski lied and were suspects and provided bad alibis;[11] and for the evidence of Dills's, Castaneda's and Alexander's accounts.[12] By withholding this evidence, Defendant Officers violated clearly established law.

### B. Weeks Is Not Entitled to Qualified Immunity On Plaintiff's Fabrication-of-Evidence Claim

#### 1. Plaintiff Plausibly Alleges Fabrication Theories Against Weeks

Plaintiff alleges that Weeks took initial statements from Dills and Alexander, which corroborated Long's account that she arrived home after the murder and minutes before calling 911, and from Castaneda, which left Lovejoy without any alibi. Instead of reporting those statements, Weeks fabricated different accounts for each witness to give, changing the timeline to create the opportunity for long to have committed the crime and to create an alibi for Lovejoy, after which he coerced and manipulated the witnesses to adopting those false accounts. Statement V(C) *supra*.

---

[11] *Mellen* holds it was established in 1997 that officers must disclose evidence that a key witness was a liar. 900 F.3d at 1096. *Carrillo* holds that by 1984 officers knew they must disclose evidence suggesting the involvement of an alternative suspect. 798 F.3d at 1226-27. *Tennison* holds it was established by 1990 that police must disclose an alternative suspect's incriminatory statement. 570 F.3d at 1093-94.

[12] *Kyles* established by 1995 that police must disclose prior inconsistent witness statements casting doubt on government witnesses and evidence casting doubt on the thoroughness or bias of a police investigation. 514 U.S. at 442-46; see also *Banks*, 540 U.S. at 694.

By doing this, Weeks knowingly fabricated witness accounts implicating Long, *and* he coerced witnesses into producing falsified evidence.

To succeed on a §1983 claim of deliberate fabrication of evidence, Long must show that Weeks (1) deliberately fabricated evidence that (2) was used to deprive Long of liberty. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Ultimately, deliberate fabrication can be shown through either direct or circumstantial evidence. Defendants contend that "Long does not allege any direct evidence fabrication by Weeks." OB-64. That is incorrect. Long alleges direct fabrication, *and* she alleges that there is circumstantial evidence of fabrication as well.

But it is premature to argue about whether Long will prove her claims with direct or circumstantial evidence, because that is an evidentiary question resolved at summary judgment at the earliest. A motion to dismiss asks only whether a plaintiff has set forth allegations that "raise a reasonable expectation that discovery will reveal evidence" supporting claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A plaintiff's complaint need not plead detailed facts or identify specific evidence. This Court should not indulge Defendants' desire to litigate evidentiary issues at the pleading stage.

However, even if Long were required to plead different methods of proof, she has done so. Regarding direct evidence of fabrication, Long alleges that Weeks received initial statements from the key witnesses, which exonerated Long and

implicated Lovejoy, and he fabricated contradictory and new statements for the same witnesses to provide, which implicated Long and exonerated Lovejoy. Statement V(C) *supra*. Long alleges Weeks made up these witness account out of whole cloth and then reported those false statements. This is quintessential direct evidence of fabrication. *Spencer*, 857 F.3d at 793 (report where interviewer deliberately mischaracterized witness statements direct evidence of fabrication).

Using circumstantial evidence, a plaintiff who can prove a fabrication claim two ways: (1) by showing an officer continued to investigate the plaintiff even though the officer "knew or should have known" the plaintiff was innocent, or (2) by showing the officer used "investigative techniques that were so coercive and abusive" that he "knew or should have known that those techniques would yield false information." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). Long's allegations encompass both types of circumstantial evidence.

First, Long alleges explicitly that Weeks knew she was innocent yet continued to investigate her, Statement V(A), V(C) *supra*, and the reasonable inference can be drawn from her allegations that the Weeks should have known she was innocent, because no physical evidence connected Long to the crime and no witnesses identified Long as a suspect, ER-42¶8. Weeks's mental state "may be alleged generally," Fed. R. Civ. P. 9(b), and these allegations are independently enough to support Long's fabrication claim.

48

Second, Long also alleges Weeks's tactics with witnesses were so coercive he "knew or should have known that those techniques would yield false information." *Bradford*, 803 F.3d at 386. Long alleges Weeks conducted an extensive interrogation of Dills, in which he told Dills he was a suspect, threatened him with prosecution, and fed him facts about the investigation; and that he manipulated and coerced Castaneda by telling him that Lovejoy was not involved in the crime, that Long was accusing Lovejoy, and police needed Castaneda to say he was with Lovejoy when the crime occurred. Statement V(C) *supra*.[13] The reasonable inference can be drawn that Weeks knew, or should have known, that his intentional manipulation of testimony would yield false evidence. *Bradford*, 803 F.3d at 386. These allegations also support Long's fabrication claim.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and as the Supreme Court has admonished repeatedly, this notice pleading standard does not

---

[13] Defendants argue that Plaintiff did not allege enough facts to show how the Defendant Officers manipulated the neighborhood witnesses into changing their stories. This factual argument is inappropriate for a motion to dismiss. At this stage, plaintiffs need only allege injuries broadly. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Here, Plaintiff's injury is that Defendants used manipulative tactics that they "knew or should have known" would yield false testimony. *See Devereaux*, 263 F.3d at 1077. Plaintiff will have the opportunity to uncover more details about Defendant Officers' manipulation during discovery, and she will later be held to a higher burden. For now, though, her factual allegations suffice because they must be taken as true.

require a plaintiff to plead specific facts. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). It requires only that the plaintiff "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93. This Court should decline Defendants' invitation to hold Long to a more stringent standard. *Cf. Crawford-El v. Britton*, 523 U.S. 574, 594-97 (1998). Defendants will have their opportunity to test the evidentiary support behind Long's claims later in the case, but that test should not be administered prematurely. Long has satisfied her burden at this stage.

Defendants ignore Long's allegations of Weeks's direct fabrication of witness accounts and instead argue that Weeks's manipulation tactics do not rise to the level of a constitutional violation. OB-64-65. However, they misstate the facts and holdings of the two cases upon which they rely, *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), and *Gausvik v. Perez*, 345 F.3d 813 (9th Cir. 2003). In those cases, the alleged fabrication referred to officers' repeated admonishments "to tell the truth," *Devereaux*, 263 F.3d at 1077, and other generic "overbearing tactics," *Gausvik*, 345 F.3d at 817. But as this Court recognized in both cases, the officers did not know (and had no reason to know) that their tactics would yield false information. *Devereaux*, 263 F.3d at 1077; *Gausvik*, 345 F.3d at 817. This case is different. Long alleges Weeks *knew* the true timeline of events that witnesses recounted initially, then manipulated the witnesses into changing their version of

events to inculpate Long and exculpate Lovejoy. Weeks in this case thus "knew or should have known" his tactics "would yield false information," making the tactics unconstitutional. *Devereaux* 263 F.3d at 1077.

Defendants also cite a series of Seventh Circuit cases that distinguish between coerced testimony and fabricated evidence. OB-65-67. Those cases stand for a similar principle as *Devereaux* and *Gausvik*: Because coerced testimony may be true or false, police officers are not always constitutionally liable for coercing testimony from a witness. But when a police officer "manufactures false evidence against a criminal defendant" and that false evidence is "later used to deprive the defendant of [her] liberty in some way," due process is violated. *Avery v. Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017). Long's allegations fall in the latter category. She alleges Weeks's manipulation was more than overbearing, and that he intended to obtain false evidence, knew his tactics would yield false evidence, and if he did not certainly should have known as much.

Defendants also argue that threats of prosecution are not sufficiently coercive to establish deliberate fabrication. OB-69-71. This argument ignores that Long alleges direct fabrication, alleges that Weeks pursued Long knowing she was innocent, and alleges other coercive tactics used with Dills and Castaneda apart from threats of prosecution. Setting that aside, this Court rejected the same argument in *Gantt v. Los Angeles*, where officers "threatened to charge" a witness with the

51

murder being investigated if he did not provide information, and then told the witness to lie about materials they showed him. 717 F.3d 702, 708 (9th Cir. 2013). This Court found "a reasonable juror could have concluded" these tactics were "so coercive and abusive" that the officers "should have known" they would yield false information. *Id. Gantt* provides two takeaways: First, the question of which coercive tactics constitute deliberate fabrication is a factual question a jury must decide, and not one for an appellate court considering an interlocutory appeal from a motion to dismiss. Second, the combination of threatening prosecution and changing a witness's testimony—the precise facts Long alleges—suffices to establish a fabrication claim.

Finally, Defendants argue Long's fabrication claim fails as a matter of law because she had the opportunity to impeach the witnesses during her criminal trial. OB-68-69. This argument appears targeted at the second element of Plaintiff's fabrication-of-evidence claim (causation) because it is inapplicable to the first (that Defendants deliberately fabricated evidence). However, causation is a factual question that should be left for the jury, *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021), so the impeachability of witnesses is not a relevant issue for an interlocutory appeal of a motion to dismiss. But even if it were to be considered, the impeachment of witnesses does not cure the fabrication of evidence—fabricated evidence always renders a trial constitutionally unfair. *Caldwell v. San Francisco*,

889 F.3d 1105, 1115 (9th Cir. 2018). Defendants' arguments for immunity on Long's fabrication claims fail.

**2.    It Was Established Long Before 2003 That Police Could Not Fabricate Evidence**

*Devereaux* concluded that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." 263 F.3d at 1075. *Devereaux* did not require a case holding that a particular fabrication was unconstitutional to make it "clearly established" that the tactic of fabricating evidence was off-limits. Rather, because it was "virtually self-evident" that police officers could not use fabricated evidence to charge an individual, *Devereaux* established that *any* means of deliberately fabricating evidence is unconstitutional. *Id.* at 1075.

Supreme Court and Ninth Circuit cases put the question whether it was clearly established by 2003 that police officers could not knowingly fabricate false evidence, including witness statements, far beyond reasonable debate. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (holding in 1959 that that state officials cannot knowingly use false testimony at trial); *Pyle v. Kansas*, 317 U.S. 213, 214 (1942) (holding in 1942 that use of false statement from witness who was threatened with prosecution if he did not testify violated due process); *Caldwell*, 889 F.3d at 1114-15 (established by 1990 that a fabricated witness statement contradicting a real account violates due process); *Spencer*, 857 F.3d at 798 (established by 1984 that

police cannot make reports of key witness statements that directly contradict what the witnesses actually said).

Defendants resist *Devereaux*'s reasoning, arguing it was not "clearly established" in 2003 that the tactics used in this investigation were unconstitutionally coercive or abusive. However, their argument fixates myopically on only one circumstantial method of proving a fabrication claim—that the officers' investigative techniques were so coercive and abusive that they knew or should have known the techniques would yield false information. Defendants do not dispute it was clearly established in 2003 that police officers could not directly fabricate evidence, nor do they dispute that it was clearly established in 2003 that officers could not continue to investigate a suspect knowing the suspect was innocent. By failing to address these two independent methods of proving a fabrication claim, Defendants forfeit any argument about them. *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008). Because Long alleges her fabrication claim invoking both of these methods of proof, this Court can deny Weeks qualified immunity because of this forfeiture alone.

Regardless, it was clearly established in 2003 that police officers could not use investigative tactics that they "knew or should have known" would yield false information. The test thus hinges on the officer's mens rea, not his actus reus. See *Costanich v. Dep't of Social and Health Servs.*, 627 F.3d 1101, 1111 (9th Cir.

54

2010) ("The *Devereaux* test envisions an investigator whose unlawful motivation is illustrated by her state of mind regarding the alleged perpetrator's innocence …"); *cf. Ruan v. United States*, 597 U.S. 450, 459 (2022) (noting that a scienter requirement "helps to separate wrongful from innocent acts" in criminal law). The test clearly establishes the unconstitutionality of *any* tactic that the officer knows or should know would yield false evidence. If it were otherwise, officers could escape liability by inventing new and more sadistic means of coercing witnesses into fabricating evidence.[14]

Long alleges that Weeks directly fabricated witness accounts to change the timeline on the night of the crime, that he did so knowing Long was innocent, and that he used techniques to force the witnesses to adopt his fabricated accounts. Any reasonable officer in that situation would know that purposefully altering witness testimony violates the constitution. Weeks is not entitled to qualified immunity.

---

[14] Defendants again improperly refer to materials outside of the complaint to contradict Long's allegations and argue that Dills was not coerced, OB-71-72, citing a trial transcript that merely shows Long's criminal defense attorney confirmed at trial Dills did not make a recorded statement that he would tell the officer whatever he wanted. ER-154-161. This transcript says nothing about the interrogation of Dills that preceded his recorded statements, which is precisely what Long's allegations are about.

**C.  Defendants Are Not Entitled To Qualified Immunity On Long's Claim That They Failed To Collect And Preserve Evidence**

    **1.  Long Plausibly Alleges Her Claim That Anderson, Newman, Verdugo, and Bloomfield Failed to Collect and Preserve Physical Evidence**

Long alleges that Anderson, Newman, and Verdugo violated her due process rights by failing to collect and preserve potentially exculpatory evidence: a champagne bottle and cup that harbored forensic evidence from true killer, and fingerprint impressions and other forensic evidence from doors and items in the house touched by the true killer, Statement V(D) *supra*. Long also alleges that Bloomfield, along with the other Defendant Officers, failed to preserve Long's jacket as it was found at the scene. ER-14, ER-21-22, ER-26-27; SER-18¶66.

There are three elements to a claim based on the failure to collect and preserve evidence: (1) the officers must have acted "in bad faith"; (2) the evidence must have "potentially exculpatory value"; and (3) plaintiff could not have obtained "comparable evidence" through other reasonably available means. *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015); *Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988). Long's pleadings satisfy each element.

Long alleged that Defendants acted "in bad faith" by alleging that they framed her for the murder. Mental states may be pleaded generally, Fed. R. Civ. P. 9(b), and Long's allegations clear that hurdle, especially when reasonable inferences are drawn in her favor, *Iqbal*, 556 U.S. at 678. Long alleges Defendants "settled on

56

Long" as their suspect and then contrived their investigation to pin the murder on her. Statement V-VI *supra*. Defendants achieved their goal by declining to collect and preserve forensic evidence that could have identified the true killer, as well as fabricating other inculpatory evidence and suppressing exculpatory evidence. Statement V(D) *supra*. Framing a suspect for murder through unlawful investigative methods can only be done "in bad faith"—there is no good-faith basis that could justify manipulating an investigation to fit a preconceived notion.

Additionally, the forsaken evidence was "potentially exculpatory" because it "could have been subjected to tests" that might have exonerated Long. *Zaragoza-Moreira*, 780 F.3d at 978. Testing of the champagne bottle and cup would have revealed who was with Conde near the time of the murder, Statement V(D) *supra*, implicating alternative suspects and exculpating Long, *cf. Williams v. Ryan*, 623 F.3d 1258, 1265 (9th Cir. 2010); *U.S. v. Manning*, 56 F.3d 1188, 1198 (9th Cir. 1995). The same is true for the disregarded fingerprint evidence—Defendants' investigation revealed the killer touched certain doors and other items, but Defendants failed to preserve this evidence despite its connection to the true killer. Statement V(D) *supra*. Additionally, Long's blood-free jacket corroborated her account that she had arrived after the murder. Statement V(D) *supra*.

Finally, Long could not have obtained comparable evidence through other reasonably available means. On this issue, Defendants attempt to poke holes in

Long's complaint by disputing Long's allegations and demanding more specific facts. But Long's factual allegations must be taken as true at this stage, *Iqbal*, 556 U.S. at 678, and Long is not required to plead "[s]pecific facts" under Rule 8(a), *Erickson*, 551 U.S. at 93. Long's allegations suffice. She alleges she called 911 as soon as she found Conde's body. Statement I *supra*. Long then went to the police station and waited voluntarily for five hours to be interviewed while officers went to the scene to collect evidence. Statement II *supra*. But Defendants did not preserve the champagne bottle and cup, other fingerprint evidence, or jacket. Statement V(D) *supra*. Long had no opportunity to obtain the evidence.

At least one other appellate court has denied qualified immunity in similar circumstances. In *Armstrong v. Daily*, a plaintiff alleged he was wrongfully convicted because police destroyed evidence that could have harbored fingerprints or other exculpatory DNA evidence, and further alleged that the officers acted in bad faith by destroying the evidence to frame him for the murder. 786 F.3d 529, 533-36, 547 (7th Cir. 2015). These allegations were enough to survive a motion to dismiss. *Id.* The allegations pertaining to "bad faith" sufficed when reasonable inferences were drawn in the plaintiff's favor, and the evidence had "potentially exculpatory value" because it could have identified the true killer. *Id.* That same reasoning applies here. Defendants decided early in the investigation to frame Long, and

Anderson, Newman, Verdugo, and Bloomfield destroyed any evidence that could have inculpated someone else.

Defendants' desire to litigate facts at the 12(b)(6) stage is apparent in the cases they cite. *Cunningham v. Wenatchee*, 345 F.3d 802 (9th Cir. 2003), the primary case Defendants rely upon, was decided at summary judgment. Defendants are free to raise factual arguments later, but they cannot justify dismissing Long's complaint.

### 2. It Was Established Long Before 2003 That Police Could not Refuse to Collect and Preserve Potentially Exculpatory Evidence in Bad Faith

In *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989), this Court held "that a bad faith failure to collect potentially exculpatory evidence would violate the due process clause." It does not matter whether the potentially exculpatory evidence is a weapon, clothing, or—as in this case—forensic evidence from a champagne bottle, a cup, doors and other items at the crime scene. *Miller* clearly established that police officers could not refuse in bad faith to collect *any* evidence possessing "potentially exculpatory" value.

Defendants argue that, for it to be "clearly established" that they failed to collect and preserve evidence unconstitutionally, there must be a prior case holding that the precise type of forsaken evidence had to be collected and preserved. This piece-by-piece approach defies the Supreme Court's dictate that there does not need to be "a case directly on point for a right to be clearly established." *Kisela*, 584 U.S.

59

at 104. If an officer acting in bad faith refuses to collect and preserve potentially exculpatory evidence, he is either "plainly incompetent" or is "knowingly violat[ing] the law." *Id*. Qualified immunity should not be used to excuse such misconduct. According to *Miller*, which was decided before 2003, the failure to collect and preserve potentially exculpatory physical evidence in bad faith by Anderson, Newman, Verdugo, and Bloomfield violated the Constitution.

> **D.** **Long's malicious prosecution claim survives the motion to dismiss because Defendants are not entitled to qualified immunity on her other claims.**

Long alleges that, as the result of each of the fabrications, suppressions, and destruction of evidence described above, each of the individual Defendants caused her to be seized without probable cause pursuant to judicial process and tried for murder. ER61-62¶¶106-113. This legal theory is derivative of the others, meaning that the misconduct described above gives rise to a claim under the Fourth Amendment, just as it does under the Fourteenth Amendment due process clause. See *Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012). A malicious prosecution claim under the Fourth Amendment has been established for decades. *Manuel v. Joliet*, 580 U.S. 357, 364-65 (2017) (discussing *Gerstein v. Pugh*, 420 U.S. 103 (1975)); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

60

Qualified immunity assesses whether the conduct of a defendant is established as illegal, not whether a particular legal theory is established. *Sandoval v. County of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021) ("The focus is on the standards governing the defendant's conduct, not legal arcana."); *Armstrong*, 786 F.3d at 556. As discussed in each of the subsections above, it was clearly established in 2003 that police officers could not commit the misconduct Long alleges here—officers could not suppress material evidence, fabricate evidence, or fail to collect and preserve potentially exculpatory evidence in bad faith. Then and now, police officers who detain and prosecute individuals by committing this sort of misconduct are not entitled to qualified immunity.

## CONCLUSION

This Court should dismiss for lack of jurisdiction, or it should affirm.

RESPECTFULLY SUBMITTED,

 /s/ Steve Art
*Counsel for Kimberly Long*

| | |
|---|---|
| Steve Art | Jan Stiglitz (SBN 103815) |
| Justin Hill | Law Office of Jan Stiglitz |
| Elizabeth Wang | 14462 Garden Tr. |
| LOEVY & LOEVY | San Diego, CA 92127 |
| 311 N. Aberdeen St, Third Fl | Phone: (619) 807-5890 |
| Chicago, Illinois 60607 | |
| (312) 243-5900 | |

**February 7, 2025**

**CERTIFICATE OF COMPLIANCE WITH**
**FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)(B)(i)**

I, Steve Art, hereby certify, pursuant to Federal Rule of Appellate Procedure

32(g)(1), that the foregoing Brief of Plaintiff-Appellee Kimberly Long complies

with the type-volume limitation set forth in Federal Rule of Appellate Procedure

32(a)(7)(B)(i) and Ninth Circuit Rule 32-1(a) because it contains 13,996 words,

excluding those portions of the brief listed in Federal Rule of Appellate Procedure

32(f) that do not count toward the word limitation. I relied on the word-count

feature in Office 365.

              /s/ Steve Art_____
              *Counsel for Kimberly Long*

Steve Art                          Jan Stiglitz (SBN 103815)
Justin Hill                        Law Office of Jan Stiglitz
Elizabeth Wang                     14462 Garden Tr.
LOEVY & LOEVY                       San Diego, CA 92127
311 N. Aberdeen St, Third Fl       Phone: (619) 807-5890
Chicago, Illinois 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Steve Art, hereby certify that I served the Answering Brief and Supplemental Excerpts of the Record of Plaintiff-Appellee Kimberly Long on February 7, 2025, using the CM/ECF system, which effected service on all counsel of record for the Defendants-Appellants.

/s/ Steve Art
*Counsel for Kimberly Long*

Steve Art
Justin Hill
Elizabeth Wang
LOEVY & LOEVY
311 N. Aberdeen St, Third Fl
Chicago, Illinois 60607
(312) 243-5900

Jan Stiglitz (SBN 103815)
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Phone: (619) 807-5890